Thurber *vs.* Jewett.

---

THURBER *vs.* JEWETT.

The commencement of a suit upon a promissory note does not extinguish the lien of a chattel mortgage held as collateral to the note.

But the commencement of such suit is a waiver of the forfeiture of the condition of the mortgage.

A tender to be valid must be made to the creditor or some one authorized to act for him. It is insufficient if made to a mere servant of the creditor.

A tender for the purpose of cancelling a judgment should include damages as well as costs, and a tender of the damages, with the Clerk's receipt for the costs, is not sufficient.

Error to the Washtenaw Circuit.

This was an action of replevin brought in the County Court of Washtenaw County, to recover the possession of the goods and chattels described in the writ by virtue of a chattel mortgage, after condition broken. The cause was removed by certiorari to the Circuit Court.

The evidence received by the County Judge as certified to the Circuit Court, shows that various sums of money were paid by the mortgagor to the mortgagee prior to the fall of 1849, some of which were paid before and some after condition broken, and that subsequently and before the commencement of an attachment suit by the mortgagee upon a note to which the mortgage was collateral, the whole amount due on the note and secured by the mortgage, was paid to and accepted by the mortgagee. To recover this balance which was not then ascertained, the attachment suit was brought. The other facts of the case sufficiently appear in the opinion of the Court.

*Colman & Root,* for plaintiff, contended,

1. That the plaintiff having a chattel mortgage upon the property replevied, which had become due at the time of the issuing of the writ, his title to the property was absolute at law. (*Charter* vs. *Stevens,* 3 *Denio,* 83; *Burdick* vs. *Mc Vanner,* 2 *Id.* 170; *Fuller* vs. *Acker,* 1 *Hill,* 473; *White* vs. *Cole,* 24 *Wend.* 142–3; *Smith* vs. *Acker,* 23 *Ib.* 667; *Patchin* vs. *Pierce,* 12 *Ib.* 61; *Case* vs. *Boughton,* 11 *Ib.* 109; *Langdon* vs. *Buel,* 8 *Ib.* 80 ; *Ackley* vs. *Finch,* 7 *Cow.* 290 ; *Brown* vs. *Bennett,* 8 *J. R.* 96; 4 *Kent's Com.* 138, *and cases there cited.*)

2. A tender on a mortgage of chattels, after the title has

become absolute in the mortgagee at law does not discharge the lien, or reinvest the title of the property in the mortgagor.

The tender to be effectual must be prior to a forfeiture. (*Brown* vs. *Bennet*, 8 *J. R.* 96; *Patchin* vs. *Pierce*, 12 *Wend.* 61; *Charter* vs. *Stevens*, 3 *Denio*, 35; *Burdick* vs. *McVanner*, 2 *Ib.* 170.)

And the rule is the same in a mortgage upon real estate. (*Post* vs. *Arnot*, 2 *Denio*, 344; *Merritt* vs. *Lambert*, 7 *Paige*, 344.)

*Sedgwick, Gott & Walker*, for defendants in error.

The tender by the defendant to the plaintiff, or to the person who was acting for the plaintiff in the premises, of the amount due on the chattel mortgage, discharged the lien of the chattel mortgage. (*Jackson* vs. *Crafts*, 18 *J. R.* 110; *Waters* vs. *Stewart*, 1 *Caine's C. in E.* 69; *Edwards* vs. *Farmers' Fire Ins. Co.* 21 *Wend.* 483; *Cameron* vs. *Irwin*, 5 *Hill*, 271.)

The class of decisions holding that upon default in the condition of a chattel mortgage, the title of the property rests in the mortgagee has grown out of questions raised upon mortgages where after default, nothing more remains to be done by the mortgagee. They do not apply to cases containing the stipulation of the mortgage in this case. Here, the mortgagee, to make his title absolute, must foreclose by sale, after the requisite notice. Until he does so, his lien may be discharged by a payment of the debt. This view of the subject is sustained by the principles of the later decisions in cases of mortgages upon real estates. See *Waters* vs. *Stewart* and *Edwards* vs. *Farmers' Ins. Co.*, above cited.

In *Green* vs. *Dingley* (11 *Shep.* 131,) it is held that, when a note is secured by mortgage of personal property, a demand of payment of the amount due on the note after it becomes payable, is a waiver of forfeiture of the mortgaged property. (*Leighton* vs. *Shapley*, 8 *N. H.* 359.)

38

By the Court, WING, J.

Assuming for the present that the proof offered by the defendant in the County Court was properly received under the pleadings, the question is presented whether the facts proved were such as to establish a legal defence to the action.

The books agree in this, that a chattel mortgage is a conditional transfer or conveyance of the property itself, and if the condition is not duly performed, the whole title rests absolutely at law in the mortgage. (2 *Story Eq. Juris.* 378 § 1030, *Tannahill* vs. *Tuttle,* ante 104.)

The defendant resisted this action upon two grounds. First, that the forfeiture of the condition of the mortgage was waived by the mortgagee by his attachment suit upon the note which the mortgage was given to secure, and secondly, that the mortgagee's title to the property was divested by a tender to him by the mortgagor of the amount due on the note.

Then was the right of the plaintiff to take possession of the property, divested or waived by the previous attachment.

The mortgage was wholly distinct from and collateral to the note, and the creditor had distinct remedies on each security. After judgment in the attachment suit, the note undoubtedly merged in the judgment, and no further proceedings could be had directly upon the note, but it did not destroy the debt, and therefore did not defeat or release the mortgage; for the condition of the mortgage is that the mortgagor shall pay the debt; and until the debt is actually satisfied, the mortgage remains in full force. As well might it be said that a renewal of a note secured by mortgage would have the effect to discharge the mortgage; but this is not its effect. (*Pomeroy* vs. *Rice,* 16 *Pick.;* *Watkins* vs. *Hill,* 8 *Ib.* 522; *Dunham* vs. *Dey,* 15 *J. R.* 554.) Neither does the giving up a note, and accepting a recognizance in lieu thereof for the sum due, discharge a mortgage given

to secure it.  (9 *Mass.* 242.)  Nor does the fact that the note is barred by the statute of limitations, discharge the mortgage by which it is secured.  (*Thayer* vs. *Mann*, 19 *Pick.* 535.)  Nor does the fact that the mortgagor was charged on a trustee process, and committed to prison, and discharged on taking the poor debtor's oath, and the further fact that the judgment was released to the debtor by the judgment creditor, discharge the mortgage.  (*Corey* vs. *Prentiss*, 7 *Mass.* 63 ; *Moore* vs. *Woods*, 7 *N. H.* 297.)  We have found two cases in which it was held otherwise; one is the case of Cleverly vs. Bristed, 8 Mass. R. 150.  Suit was brought on the note, as security for which a pledge was given.  It was held that a suit on the note released the pledge ;. but the authority of that case has been doubted, and it has not been followed, because it was decided contrary to the common law.  The editor of the last edition of the Mass. Reports remarks in a note to this case :  " There seems to be no reason why he might not lawfully have attached in this case, as well as in the case of a mortgage of real estate."  That was a case of a pledge in which the title of the plaintiff was not as in case of a mortgage absolute, after condition broken.

In the case of Butler & Vosburg vs. Miller, 1 Denio, 407, a chattel mortgage was given to secure a number of notes. Subsequently and after the condition was broken, the mortgagor gave a bond and warrant of attorney for the same amount, and judgment was rendered on the bond.  Another judgment had been recovered in favor of a third party and levied on the mortgaged property, the judgment was rendered in favor of the mortgagee on his bond and warrant, the same day he received it, and he placed his execution in the hands of the same officer who had previously levied in behalf of the third party.  The goods were sold on the first execution and did not satisfy it.  The mortgagee then undertook to resort to his mortgage for the payment of his debt.  Judge Jewett, who gave the opinion of the Court, remarks :  " In general, the

acceptance of a higher security than the mortgagee had, is an extinguishment of the debt. Does not the law presume this judgment was taken as a satisfaction of the original debt? I am of opinion that it was ; the mortgagee took a new security for the old one, and the assent of the defendant to the judgment forces me to believe the parties did intend a satisfaction." The case was taken to the Court of Appeals, and in giving their opinion, that Court, by Johnson, J., remarks: " It will scarcely be contended that in case the notes in question had been secured by a mortgage upon real estate, a judgment upon them would have extinguished the mortgage; and yet a mortgage on real estate is a mere security and incumbrance on the land, and gives the mortgagee no title therein whatever. Whereas a personal mortgage is more than a mere security. It is a sale of the thing mortgaged, and operates as a transfer of the whole legal title to the mortgagee, subject only to be defeated by the performance of the condition. And if it be conceded that a judgment upon the original indebtedness would not extinguish a collateral security for its payment, upon real estate, I do not see how it could divest a title to personal property acquired by purchase. A vested legal title, whether in real or personal property, is the highest of all securities. Certainly higher than the mere lien of a judgment upon land, or the right of a plaintiff to personal property acquired by levy under execution. It is clear that the notes were merged in the judgment by operation of law, but it does not certainly follow that all the collateral securities would be extinguished. The debt is not yet satisfied, and until that is done, all mere collateral securities, whether upon real or personal property, should be allowed to stand. Especially titles to property acquired under instruments where the parties stand in the relation of vendor and purchaser without fraud." (1 *Comst.* 497.)

In the case of Chapin & Wilson *vs.* Clough, 6 Verm. 123, a note was given by the defendant to the plaintiff for a

sum of money. Subsequently, the defendant delivered to the plaintiff a note against third parties who were perfectly good, as collateral security for his own note. The plaintiff commenced this action on the note given to him by the defendant without offering to restore the note pledged. It was admitted by the defendant's counsel, that by the English common law the creditor was permitted to retain his pledge and pursue the body or any other remedy, and that according to that law the right of action in that case would not be suspended. The Court say an attachment is only to compel security for what may be due, and the defendant may replevy or receipt the property if he is responsible, and if he is not, the creditor is just in time to secure his debt. The Court held that the plaintiff was not bound to return the pledge, but might hold it and sue the note it was given to secure.

It is obviously true, that if the mortgagee recovers judgment on a note secured by mortgage, and takes the mortgaged property in execution, he waives his mortgage, and the lien thereby created. (11 *Metc.* 226–31; 8 *N. H.* 291; 5 *Pick.* 178; *Sweet* vs. *Brown*, 29 *Maine R.* 31.) But in the case of pledge as well as a mortgage, the creditor may, at common law, proceed against the debtor in the same manner as if there was no pledge or mortgage, and is not bound to restore the pledge until the debt is paid. ( *Yelverton*, 178, *note* 1 ; 7 *Mass.* 63 ; *Ratcliff* vs. *Dows*, 4 *Mass.* 247 ; 10 *J. R.* 482 ; 3 *D. & E.* 342 ; 1 *Sch. & L., Ib.* 176 ; 2 *Starbuc's Cases*, 72; 2 *Strange*, 919 ; 2 *Gall.* 159.) And we have found no cases in the reports of this country that have held otherwise, except the cases in 8 Mass. and 1 Denio, cited above. The Court say in the case cited from 6 Verm., that the case in 8 Mass. is contrary to the common law, and has not been followed in New England, and the case in first Denio we have seen was reversed in the Court of Appeals. In 10 J. R. 482, the Court say a creditor who takes a mortgage has three remedies, either of which he is at lib-

erty to pursue, and all of which he may pursue until his debt is satisfied. In 2 Gall. 252, Judge Story says, "upon principle, there would seem to be no reason to restrain the mortgagee from every remedy *in rem* and *in personam* until he has obtained full satisfaction of his debt. The debt ought to retain its original validity, it being independent of the mortgage or pledge, and if equity should interfere to enlarge the time of redemption, or to prevent a double satisfaction, it is the utmost exercise of its authority which justice and conscience would seem to require. To deprive a creditor of a single satisfaction of his debt in favor of a negligent or fraudulent debtor would not comport with the maxims which usually govern Courts.

That this is the common law in relation to mortgages upon real estate is manifest from the fact that our Legislature has provided by express enactment that a mortgagee shall not proceed to foreclose his mortgage where proceedings at law have been commenced to collect the debt, and before they are terminated.

We think we have established the position, that the commencement of the suit in attachment did not release or extinguish the mortgage. Indeed, it would seem that the idea that the mortgage would be released by the commencement of the suit upon the note, is predicated upon the supposition that the mortgagor has an equity of redemption at common law, but no right remains in the mortgagor of personal property precisely corresponding with an equity of redemption of real estate, it having been the prevailing doctrine, that the mortgagee of chattels is the legal owner, and that by a breach of condition the mortgagor's title is absolutely forfeited. If the doctrine can be maintained that a suit upon a note releases the mortgage given to secure it, two securities can be no better than one, for then by an attempt to enforce the one, the other must be extinguished.

The case of Hoyt *vs.* Hudson, 12 J. R. 207, is cited to show that a levy upon property is a satisfaction of a debt, and it

is urged that the attachment of property must be held to satisfy the mortgage, because it must be also held to be a satisfaction of the debt. Whatever effect it might have upon proceedings in the same suit, it cannot affect proceedings on a collateral instrument. It is true, that a levy upon personal property has been held to bar a further levy upon the same execution, until the property first taken upon execution has been first sold.

But even on final process, a levy on real estate is not a *prima facia* satisfaction of the debt. (2 *Doug. Mich.* 150.)

In the case at bar, the personal property attached was appraised at five dollars, and the rest of the property attached was real estate, of which the attaching officer did not retain possession, and if he did, it could not bar this suit to recover the possession of the mortgaged property. The title to the land attached may prove not to be in the defendant, and when that remedy is pursued to its utmost extent, it may not produce a dollar to apply on the judgment, or debt. It appears, in this case, that the judgment was recovered in the attachment suit, before this case was finally tried; but obtaining judgment in any cause is only one step, and often a remote one towards obtaining satisfaction. In the mean time, the property mortgaged belonged to the plaintiff absolutely, unless by the commencement of the attachment suit, the plaintiff *waived the forfeiture of the condition* of the mortgage, of which we shall treat presently.

If we give to the doctrine we have been considering its legitimate effect, nothing short of actual satisfaction upon some one of the remedies resorted to, can cancel the mortgage. Hard hearted creditors may attempt to oppress their debtors, by multiplying suits to recover one demand; but it has been seen that a Court of Chancery will interfere to prevent oppression, and whether multiplied proceedings may or may not operate oppressively, cannot vary the right of the plaintiff in this suit, for as was said by Judge Cowen, in 24

Wend. 142, (in speaking of an equity of redemption in a chattel mortgage,) we are sitting in a Court of Law, and an equity of redemption has never been held tangible in a Court of Law.

It is also urged by the defendant, that he had the right to the benefit of a tender, until the mortgagee had taken and offered the property for sale, under the power contained in the mortgage, but it is not so. In the case of Burdick *vs.* McVanner, (2 *Denio*, 170,) which was a case of trover for property taken by a mortgagee, it was urged that the mortgaged property was subject to an equity of redemption before sale, under the power of sale in the mortgage, but the Court held that while the power of sale authorized the mortgagee to sell the mortgaged property, and thus satisfy the debt, it did not *require* him to do so, or forfeit his right under the mortgage. The Court say "such a power in a chattel mortgage has never been supposed to extend the time of payment specified in the mortgage, nor under any circumstances to reinvest the mortgagor with title to the property." And in the case of Ferguson *vs.* Thomas, (21 *Maine R.* 501,) the Court held that the power of sale in the mortgage was a mere stipulation for the benefit of the mortgagee, and could not impair his right to immediate possession.

It is also urged that the tender by Mr. Walker to the plaintiff of the amount recovered in the attachment suit immediately after the judgment was rendered, should have the effect to cancel the mortgage, but the amount tendered was the amount of the damages recovered, and did not cover the costs which were some sixteen dollars. Afterwards, Mr. Walker paid to the Clerk of the Court the costs, and then tendered to the plaintiff the amount of the damage together with the Clerk's receipt for the costs. This was not a good tender, the costs belonged to the plaintiff, he was responsible for them, and was presumed to have paid them, and it does not appear that Walker acted by defendant's authority, or that he was his attorney in that suit.

A mortgage may be *discharged* or *released* as well as paid, and this either by a direct and express instrument executed for the purpose, or by construction and implication of law arising from other acts of the parties. There must be some act of the mortgagee from which the law will imply an extension of the period of redemption, or consent given to entitle the mortgagor to the benefit of a tender after condition broken. (*Brown* vs. *Bement*, 8 *J. R.* 96; 5 *Pick.* 105; 3 *Ib.* 414.) Acceptance of a part after condition broken is not a waiver of the forfeiture. (12 *Wend.* 61; *Case* vs. *Boughton*, 11 *Ib.* 109; *Langdon* vs. *Buel*, 9 *Ib.* 83; *Fuller* vs. *Acker*, 1 *Hill*, 475; *Smith* vs. *Acker*, 23 *Wend.* 667; 1 *Brev.* 286; 9 *Porter*, 492.)

In the case of Charter *vs.* Stevens, 3 Denio, 35, the mortgagor brought trover for a horse which had been taken on a chattel mortgage. It appeared that the mortgagee took the mortgaged property and advertised it for sale, and sold it under the power of sale contained in the mortgage; the property was sold separately, and a sale of a part of the property produced a sum sufficient to satisfy the debt. He, however, went on and sold the whole, and it was for the property sold after the debt was satisfied, that the action was brought. The Court, while they held that the defendant's title became absolute on failure of the mortgagor to pay, decided that the mortgagor did not lose all his title because he had an equity which a Court of Equity would enforce, and they held that the sale of the property was equivalent to an absolute payment. This decision is put upon the ground that the mortgagee elected to act upon the power of sale, and in so doing, he, by a reception of the money, waived the forfeiture. The Court admit that the mortgagee might have taken the property after condition broken, and was not bound to sell it, but might have retained it as his own, leaving the mortgagor to enforce his equity of redemption as he best could, but as the mortgagor chose not to rest upon that right, but elected to

39

proceed under the power of sale, he could not sell more of the property than was sufficient to satisfy his claim, for the power of sale became void, and he should abide the course he had elected to take. There can be no difficulty in holding that a voluntary reception by the mortgagee of his debt after forfeiture of the condition of the mortgage, should release the mortgage. This is held to be the law in the following cases: Park *vs.* Hall, 5 Pick. 206, 210, 211; Hatch *vs.* White, 2 Gallis. 152; 6 N. H. R. 12; 5 Pick. 418; 4 Greenl. R. 495. In Quint *vs.* Little, 7 Metc. 354, Judge Dewey says, " the mortgagee received payment in full after forfeiture, and the payment of the whole would well authorize the jury to infer a waiver of the right to hold absolutely."

The mortgage not being released by the suit on the note, was the forfeiture of the condition of the mortgage waived by that suit?

In the case of Cutts *vs.* the York Manufacturing Company, 14 Maine Rep. 326, it was decided that by the commencement of a suit upon the note secured by a chattel mortgage, the forfeiture of the condition of the mortgage was waived. This point was distinctly made and decided by the Court. We have not been able to find any other decision to the same effect, neither have we seen any case besides in which the point was made. This appears to us to be a very reasonable doctrine. The mortgagee, by his suit, seeks to collect the money due to himself from the mortgagor. He indicates by this act of bringing suit on the note, that he does not hold the property in satisfaction of his debt. It seems just to allow the mortgagor to pay him, and thereby discharge the mortgage, instead of permitting the mortgagee to collect the debt by a suit on the note, and at the same time retain the property bound in this mortgage, and turn the mortgagor over to his uncertain remedy in equity. By holding the suit on the note to be waiver of the forfeiture of the condition of the mortgage, all the securities as well as the remedies there-

on which the mortgagee ever had, are preserved to him so far forth as they may be necessary to produce actual payment of his debt.

On the argument of this cause before the Court, it seemed to be conceded that Kellogg was authorized to demand the mortgaged property of defendant, and acted for him in taking possession of it. We, however, have not been able to find any evidence in the record that he was so authorized, or that plaintiff ever knew that he did act for him, but as the counsel of the plaintiff conceded it, we shall act upon the admission. It is in evidence that Kellogg took possession of a portion of the mortgaged property which was found in Ann Arbor, and said he did so by the direction and authority of the plaintiff. This is his own statement. At the same time he said he had not the mortgage or any paper. The defendant and his counsel appear to have recognized his agency, and proceeded to tender to him the sum of fifty dollars, which he declined to receive, because he did not know the amount due upon the mortgage, and he remarked that the plaintiff would be down soon, but defendant and his counsel chose to make the offer of the money to him, and then directed the son of defendant and some other person to drive the property away, and in doing so, they took Kellogg with them as far as the jail, where he got out of the wagon. It would seem from the proof, that Jewett had previously, on the same day, demanded the same property of the defendant, and the defendant refused to deliver it up to him at that time; it is not shown that any offer of payment or tender was made by the defendant to the plaintiff. To make a tender good, and binding upon the plaintiff, it must appear that the money was tendered either to the plaintiff, or to some one authorized to act for him, and not a mere servant. See Bac's Ab. Tender, E.

The reason given by Kellogg for not receiving the money, was that he did not know the amount due to plaintiff, and his saying that plaintiff would be down soon, was equivalent

to a request that the defendant should delay until he should come and act for himself. Kellogg appears to have been willing to wait; he does not appear to have insisted upon taking the property away at that time, but defendant being unwilling to wait until plaintiff should arrive, ordered the horse and wagon to be removed. Under these circumstances, it appears to us that Kellogg cannot be held to have been anything more than the mere servant of the plaintiff. Had he attempted to remove the property, it might be our duty to hold the plaintiff responsible for his acts as his agent, for if the defendant had at that time the right to redeem the property, because of the waiver of the forfeiture, the plaintiff, by keeping out of the way, and sending an agent or servant and taking the property, could not deprive the defendant of his right to tender the amount and retain his property; for suppose the property mortgaged to have been household furniture, the mortgagor could thus defeat the right to redeem and retain the property, and strip a mortgagee or his family of the means of living. But in this case no such alternative was presented to the mind of the defendant; he neglected to make a tender to the principal, when present at an earlier hour in the day, and made great haste to avoid meeting him again when told he was coming. We think, therefore, that the tender to Kellogg was not good, as having been made to the mere servant of the plaintiff, and consequently that the plaintiff was entitled to the possession of the property, and should have recovered judgment for it in this action.

In arriving at this result, we have not considered any of the objections to the proof adduced by defendant which was made at the trial before the County Judge by the plaintiff. We have assumed that the defendant's proof was properly received, yet it does not make out a good defence to this action.

It is considered that the judgment of the Circuit Court of the County of Washtenaw be reversed, and it is ordered that the plaintiff in error recover the costs of this Court.