MATICH v MODERN RESEARCH CORPORATION

Docket No. 77702. Argued April 7, 1987 (Calendar No. 4). Decided
March 7, 1988.

Steven P. Matich brought a products liability action in the
Wayne Circuit Court against Modern Research Corporation.
The court, James A. Hathaway, J., entered judgment for the
plaintiff on a jury verdict of $2,250,000. Modern was insured
primarily by Canadian Universal Insurance Company, Ltd.,
with a policy limit of $300,000, and maintained an excess
liability policy issued by the Insurance Company of North
America with a limit of $1 million. Pursuant to a consent
agreement which discharged Modern from any liability on the
judgment, Canadian paid the plaintiff $508,044.81, representing
its policy limit, plus costs, postcomplaint prejudgment interest
on the policy limit, and interest on the entire judgment from
the date of entry until its date of tender. INA paid the plaintiff
$1 million. The trial court ruled that Canadian had paid all
interest for which it was liable under its policy and Michigan
law, and that INA was not required to pay any prejudgment
interest, but was liable for postjudgment interest on the $1
million policy limit from the date of judgment to the date of
the consent agreement. The Court of Appeals, BEASLEY, P.J.,
and J. H. GILLIS, J. (M. J. KELLY, JJ., concurring in part and
dissenting in part), affirmed in part and reversed in part in an
opinion per curiam, finding each carrier responsible for pre-
judgment interest only on its policy limit, and, in addition to
liability for postjudgment interest on its policy limit, each
carrier was liable to pay postjudgment interest pro rata on the
amount by which the judgment exceeded the combined policy
limits (Docket No. 79993). The parties appeal and cross-appeal.
In an opinion by Justice GRIFFIN, joined by Chief Justice

REFERENCES

Am Jur 2d, Insurance §§ 1522, 1523, 1553-1555.

Running of interest on judgment where both parties appeal. 11
ALR4th 1099.

Insured's right to recover from insurer prejudgment interest on
amount of fire loss. 5 ALR4th 126.

Liability insurer's liability for interest and costs on excess of
judgment over policy limit. 76 ALR2d 983.

RILEY and Justices LEVIN, BRICKLEY, and CAVANAGH, the Supreme Court *held:*

An insurer whose policy includes the standard interest clause must pay prejudgment interest calculated on the basis of the policy limit from the date of the filing of the complaint until the entry of judgment. Interest on the amount of the policy limit must be paid even though the amount of interest, when combined with the amount paid pursuant to the judgment, exceeds the limit. Where a case involves both a primary and an excess insurer, each is liable to pay prejudgment interest on the amount of its respective policy limit. In addition, each must pay postjudgment interest on the entire amount of the judgment, including any amount in excess of the combined policy limits pro rata.

1. A plaintiff who prevails in a legal action is entitled by statute to prejudgment interest on a money judgment from the date of the filing of a complaint to the date of satisfaction of the judgment. Where the defendant has liability insurance provided by a primary carrier and an excess carrier, absent special circumstances, the obligation should be shared by both pro rata. If the policies contain the standard interest clause, the insurers must pay prejudgment interest from the date of the filing of the complaint until the entry of judgment, calculated on the basis of the policy limits and not on the entire judgment, even where the interest combined with the amount due pursuant to the judgment exceeds the policy limits.

2. Where an insurer contractually obligates itself by means of a standard interest clause to pay postjudgment interest on the entire amount of a judgment, the amount of interest is to be calculated on the basis of the entire judgment, including any amount in excess of the policy limit. If a defendant carries primary and excess insurance, the insurers are liable to pay interest on the entire amount of the judgment, including any amount in excess of the combined policy limits in proportion to the amounts of the limits.

3. In this case, INA is liable to pay prejudgment interest on its $1 million limit, and both insurers are liable to pay postjudgment interest on the entire judgment pro rata, including the amount in excess of the combined policy limits.

Affirmed.

Justice BOYLE, joined by Justice ARCHER, concurring in part and dissenting in part, stated that as between a primary and secondary insurer, liability for prejudgment interest should not rest solely with the insurer that controlled the defense of the underlying litigation. Pro-rata distribution between a primary

and a secondary insurer will serve to assure that an otherwise interested party will not avoid participation in the resolution of a dispute to avoid possible prejudgment interest liability. With regard to postjudgment interest, the language of the standard interest clause in the policies in this case is dispositive, clearly obligating an insurer to pay interest on the entire amount of the judgment. The determination of how prejudgment interest is to be calculated, however, need not be decided in this case as a matter of law. Rather, the question should be resolved on the basis of the understanding of the parties as reflected in the consent judgment.

146 Mich App 813; 381 NW2d 834 (1985) affirmed.

1. INSURANCE — PREJUDGMENT INTEREST — PRIMARY INSURERS — EXCESS INSURERS — POLICY LIMITS.

An insurer whose policy includes the standard interest clause must pay prejudgment interest, calculated on the basis of the policy limit, from the date of the filing of the complaint until the entry of judgment, even where the amount of interest, when combined with the amount paid pursuant to the judgment, exceeds the policy limits; where a case involves both a primary and an excess insurer, each is liable to pay prejudgment interest on the amount of its respective policy limit (MCL 600.6013; MSA 27A.6013).

2. INSURANCE — POSTJUDGMENT INTEREST — PRIMARY INSURERS — EXCESS INSURERS — POLICY LIMITS.

Where an insurer contractually obligates itself by means of a standard interest clause to pay postjudgment interest on the entire amount of a judgment, the amount of interest is to be calculated on the basis of the entire judgment, including any amount in excess of the policy limit; if a defendant carries primary and excess insurance, the insurers are liable to pay interest on the entire amount of the judgment, including any amount in excess of the combined policy limits in proportion to the amounts of the limits.

*Zeff & Zeff* (by *Michael T. Materna*); (*Gromek, Bendure & Thomas,* by *Nancy L. Bosh* and *Neal C. Villhauer,* of counsel) for the plaintiff.

*Rutledge, Manion, Rabaut, Terry & Thomas, P.C.* (by *Christopher L. Terry*), for defendant Canadian Universal Insurance Company, Ltd.

*Martin, Bacon & Martin, P.C. (James N. Martin* and *Stuart A. Fraser)*, for defendant Insurance Company of North America.

Amici Curiae:

*MacArthur, Cheatham, Acker & Smith, P.C.* (by *James G. Gross)*, for Auto Club Insurance Association, Auto Club Insurance Group, Michigan Physicians Mutual Liability Company, and Physicians Insurance Company of Michigan.

Griffin, J. In the products liability action which underlies this appeal the jury's award substantially exceeded the combined policy limits of the defendant's primary and excess liability insurance carriers. The issues now before us relate solely to liability for interest on the judgment. We are required to examine the extent of the obligation of, and the relative responsibilities as between, the two insurance carriers for prejudgment and post-judgment interest. Our review affirms the decision of the Court of Appeals.

I

With supplementation as provided in the course of our discussion, we adopt the statement of facts set forth in the opinion of the Court of Appeals:

> Plaintiff brought a products liability action against defendant Modern Research Corporation (Modern) which, after a jury trial, resulted in a May 20, 1983, judgment in the amount of $2,250,-000. Canadian Universal Insurance Company (Canadian) was Modern's primary insurer under a policy with a liability limit of $300,000. An excess liability policy was written by the Insurance Company of North America (INA), with a liability limit of $1,000,000. Canadian defended the suit

on behalf of Modern at trial and, other than being apprised of the suit, INA did not actively participate in the defense. Following the entry of judgment, Modern moved for new trial, *remittitur,* and judgment notwithstanding the verdict.

During the pendency of Modern's posttrial motions, the parties engaged in settlement negotiations which culminated in an agreement, the terms of which were placed on the record on November 18, 1983. The agreement proposed to discharge Modern from any liability on the judgment and add Canadian and INA as parties defendant in the action. Further, the defendant insurers agreed to pay the full sum of their respective policy limits. Any disagreement over the insurers' respective liability for interest on the judgment would be litigated in circuit court.

After several versions of a proposed settlement order were exchanged by counsel for the plaintiff and the two insurance carriers, a consent judgment drafted by plaintiff's counsel[1] was agreed upon and entered by the court on February 27, 1984. Thereupon, Canadian paid plaintiff $508,044.81, representing its $300,000 policy limit, $43,928.25 in costs, and postcomplaint/prejudgment interest on its policy limit and interest on the entire judgment from the date of entry until July 8, 1983, when Canadian allegedly tendered the amount of its policy limit to INA. On the same date, INA paid plaintiff its $1,000,000 policy limit.

Both carriers then filed motions for satisfaction of judgment, and plaintiff responded with a motion

---

[1] When the "amended order of judgment and consent judgment" was presented to the trial court on February 27, 1984, Mr. Terry, counsel for Canadian, explained to the court:

This Order has been negotiated back and forth over a period of several months, that is why it has taken some time to get it into a form that is agreeable to all concerned.

Thus, although the document, which was signed by all parties, may have been prepared by plaintiff's counsel, we take cognizance of the fact that the language used was the product of negotiations among the parties.

to determine liability for interest on the judgment. Plaintiff asked the trial court to award him prejudgment interest on the excess over the $300,000 policy limit of Canadian; postjudgment interest on the entire judgment amount between July 8, 1983, the date plaintiff and Canadian asserted that Canadian actually tendered its policy limit to INA, and February 27, 1984, the date the consent judgment was entered by the trial court; and interest on the unpaid balance of the judgment accruing since February 27, 1984.

After oral arguments were heard on the motions, the trial court ruled that Canadian had paid all interest for which it was liable under its policy with the insured and Michigan law and was thus entitled to a satisfaction of judgment. As to INA, the court ruled that that defendant was not required to pay any prejudgment interest but was liable for postjudgment interest on the $1,000,000 policy limit from July 8, 1983, to February 27, 1984. [146 Mich App 813, 817-818; 381 NW2d 834 (1985).]

Affirming in part and reversing in part, the Court of Appeals determined that each carrier was responsible for prejudgment interest only on its policy limits; that the obligation of INA, the excess carrier, for prejudgment interest was not relieved because Canadian, the primary carrier, controlled the underlying litigation; and that, in addition to postjudgment interest on its policy limits, each carrier was liable on a pro-rata basis for postjudgment interest on the amount by which the judgment exceeded the combined policy limits. We granted leave to appeal. 425 Mich 871 (1986).

II

Absent a statutory or contractual obligation, it was the rule at common law that a judgment did

not bear interest.[2] In Michigan a statutory basis for allowing postjudgment interest has been in place for many years;[3] however, there was no statutory provision for prejudgment interest until 1965. Since then, interest on a money judgment has been allowed by statute, MCL 600.6013; MSA 27A.6013, "from the date of filing the complaint" to "the date of satisfaction of the judgment."[4] See *Ballog v Knight Newspapers, Inc,* 381 Mich 527; 164 NW2d 19 (1969).

Although a prevailing party is entitled by statute to judgment interest, the question "who ultimately pays?" has stirred considerable controversy in situations where the defendant has liability insurance, but the insurance contract does not expressly place responsibility for interest upon the insurer, or where the judgment amount plus interest exceeds the policy limits.[5]

---

[2] See *Kermott v Ayer,* 11 Mich 181, 184 (1863); *Motyka v Detroit, G H & M R Co,* 260 Mich 396, 398; 244 NW 897 (1932); *Solakis v Roberts,* 395 Mich 13, 21; 233 NW2d 1 (1975). See, generally, 45 Am Jur 2d, Interest and Usury, § 59, p 56.

However, as Justice LEVIN has pointed out, interest was sometimes assessed and included as an element of damages. *Banish v Hamtramck,* 9 Mich App 381, 395; 157 NW2d 445 (1968). See also *Currie v Fiting,* 375 Mich 440, 454; 134 NW2d 611 (1965), and *Vannoy v City of Warren,* 26 Mich App 283, 288-289; 182 NW2d 65 (1970), aff'd 386 Mich 686; 194 NW2d 304 (1972).

[3] The first statutory basis for postjudgment interest in Michigan dates back to 1846. See 1846 RS, ch 34, § 6 and 1846 RS, ch 106, § 13. This Court has long recognized that statutory postjudgment interest is allowed in Michigan on tort judgments. E.g., *Motyka,* n 2 *supra* at 398.

[4] MCL 600.6013(2); MSA 27A.6013(2) provides, in pertinent part: "[T]he interest on the judgment shall be calculated from the date of filing of the complaint to June 1, 1980, at the rate of 6% per year and on and after June 1, 1980, to the date of satisfaction of the judgment at the rate of 12% per year compounded annually."

A recent amendment of the statute, 1987 PA 50, need not be addressed under the facts presented by this case.

[5] See, e.g., *Cosby v Pool,* 36 Mich App 571; 194 NW2d 142 (1971); *Cates v Moyses,* 57 Mich App 405; 226 NW2d 106 (1975), modified 394 Mich 762; 228 NW2d 380 (1975); *Denham v Bedford,* 407 Mich 517; 287 NW2d 168 (1980); *Michigan Milk Producers v Commercial Union*

We are required in this case to address questions of first impression including a dispute between the primary and excess insurance carriers concerning prejudgment interest. Purchase by an insured of two insurance policies establishes contractual rights and obligations as between the insured and each of the insurers. However, there being no privity of contract, such a purchase does not create a contractual relationship between the two carriers.

In dealing with differences which inevitably arise between primary and excess carriers, courts have been forced to look beyond contract law to public policy considerations and principles of equity to determine respective rights and liabilities as between two carriers.[6] At the same time, a court must harmonize the relationship between the two insurers with the responsibilities which each insurer owes to the insured.

As one commentator has counseled:

> It is important in such instances to be certain that the court does not become confused and succeed in exonerating both companies. Each should retain its legal liability; if any question arises as to which should pay, that can be settled between them by agreement or by litigation. It should not diminish the rights either of the insured or of the victim. [8A Appleman, Insurance Law & Practice, § 4894.25, p 103.]

In the instant case the tripartite relationship

---

*Ins Co,* 493 F Supp 66 (WD Mich, 1980), revisited at 564 F Supp 1545 (WD Mich, 1983); *Celina Mutual Ins Co v Citizens Ins Co of America,* 133 Mich App 655; 349 NW2d 547 (1984).

[6] For example, this Court in *Commercial Union Ins Co v Medical Protective Co,* 426 Mich 109; 393 NW2d 479 (1986), recognized that an excess insurer has a cause of action against a primary insurer for a bad-faith failure to settle or defend the insured under an equitable subrogation theory.

which otherwise would exist is affected by the fact
that the insured (Modern), the primary carrier
(Canadian), and the excess carrier (INA) joined with
plaintiff in approving and subscribing to a consent
judgment which was entered by the trial court.
The consent judgment served to resolve all differ-
ences among the parties except those relating to
plaintiff's entitlement to judgment interest.

Each of the courts below based its decision in
part upon the construction of language in the
consent judgment, which reads in pertinent part:

> IT IS FURTHER HEREBY ORDERED that Canadian
> Universal Insurance Company, Ltd., and Insurance
> Company of North America, *shall pay* to the said
> Steven P. Matich, and his attorneys, Zeff and Zeff,
> *interest owed if any, on the amount of their policy
> limits from the date of filing of the Complaint in
> this action until the date of Judgment, along with
> interest owed, if any, on the entire amount of the
> Judgment ($2,250,000.00) from the date of entry of
> said Judgment until the date of payment of said
> insurer's policy limits,* under the terms of its
> insurance policy or otherwise to be paid by such
> insurance carrier under the laws of the State of
> Michigan; *it being ordered and understood* be-
> tween the parties *that the alleged liability of
> Canadian Universal Insurance Company, Ltd., and
> Insurance Company of North America for any
> interest claimed owing on the Judgment by either
> carrier shall be litigated* in this action before the
> Honorable James A. Hathaway and it is further
> understood between the parties and ordered that
> neither the Canadian Universal Insurance Com-
> pany, Ltd., nor the Insurance Company of North
> America shall be relieved of its liability to the
> Plaintiff for the payment of such interest by rea-
> son of the release of Modern Research Corporation
> from liability under the Judgment. [Emphasis sup-
> plied.]

In this appeal, the plaintiff maintains that the

italicized language, when read in light of the
record of hearings held by the trial court, "makes
crystal clear that . . . any and all questions relat-
ing to liability of either insurer for any
interest . . . would be litigated" and resolved "un-
der the terms of [the] insurance polic[ies]
or . . . under the laws of the State of
Michigan . . . ." As plaintiff points out, in com-
menting upon the meaning of the consent judg-
ment language, counsel for Canadian, the primary
insurer, at the February 27, 1984 hearing, ex-
pressed his agreement that

> whether either insurance carrier owes
> interest . . . is to be determined solely by refer-
> ences to the policies or the law of the state of
> Michigan . . . .

Judge KELLY, dissenting in part from the Court
of Appeals decision, expressed this view:

> I construe this language [of the consent judg-
> ment] to mean that the parties had agreed to
> submit to the courts the question of the amount
> upon which postjudgment interest was due and the
> issue was to be decided in accordance with the
> terms of the insurance contracts and in accordance
> with the general principles of Michigan law. I do
> not agree that the consent judgment created sub-
> stantive rights and obligations on the subject of
> postjudgment interest. [*Matich, supra* at 828-829.]

After a careful examination of the language in
the consent judgment and the record of the hear-
ings held by the trial court, we are persuaded by
the argument of plaintiff on this point. We believe
Judge KELLY correctly took exception to the use of
the consent judgment to "create[] substantive
rights and obligations on the subject of postjudg-

ment interest." Indeed we reach the same conclusion with respect to prejudgment interest.

Accordingly, as a preliminary matter, we reject the invitation to resolve the issues presented in this case on the basis of the consent judgment. Although we resolve the issues presented by looking to the terms of the insurance policies and the law of Michigan, rather than the consent judgment, we observe that our resolution, it so happens, is not at odds with the results reached by the Court of Appeals.

We turn now to the issues raised in this appeal.

### III

First, defendant INA, the excess insurer, assigns error to the Court of Appeals holding that it is responsible for prejudgment interest on its policy limits of $1,000,000.

Citing *Michigan Milk Producers v Commercial Union Ins Co,* 493 F Supp 66 (WD Mich, 1980),[7] INA argues that liability for all prejudgment interest should fall on the insurer which controlled the defense of the underlying litigation.[8] Pointing to

---

[7] See also *Michigan Milk Producers v Commercial Union Ins Co,* n 5 *supra,* 564 F Supp 1552, where the federal district court stated that "the party who has full control of the underlying litigation is obliged to pay all of the pre-judgment interest."

[8] INA also seeks to avoid liability for prejudgment interest on its policy limits under the following provision of its policy which is entitled "Other Insurance":

> If collectible insurance with any insurer is available to the insured covering a loss also covered hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance provided, however, this does not apply to insurance which is written as excess insurance over INA's limit of liability provided in this policy.

INA argues that "[d]ue to this provision, INA should not be obliged to pay any pre-judgment interest until all pre-judgment interest owing to the Plaintiff is collected from the other insurer, being Defendant, Canadian Universal."

the fact that Canadian, the primary insurer, controlled the litigation, INA maintains that it should not be liable for any prejudgment interest, and it claims that such a result is required by the reasoning of this Court in *Denham v Bedford,* 407 Mich 517; 287 NW2d 168 (1980).

In *Denham,* the Court held the insurer liable for payment of prejudgment interest on its policy limits, even though such payment exceeds the policy limits.[9] Focusing on the fact that the insurer, not the insured, controlled the litigation,

_____

However, we, like the Court of Appeals, "are unable to extract from the language of this clause the interpretation sought by INA . . . ." *Matich, supra* at 820. Further reference to INA's policy demonstrates the effect of this clause is to limit INA's proportionate liability to an amount equal to, or less than its policy limits. As noted earlier, *Denham* held that an insurer is liable for prejudgment interest in excess of the policy limits despite the liability limits in its policy.

[9] Prior to *Denham,* two decisions applying Michigan law, *Dittus v Geyman,* 68 Mich App 433; 242 NW2d 800 (1976), and *Westchester Fire Ins Co v Ring Bros Heating Co,* 491 F2d 711 (CA 6, 1974), held that an insurer's obligation to pay part or all of the judgment and the prejudgment interest on that judgment was limited to the amount of the insurance policy coverage. Other jurisdictions which allow prejudgment interest have adopted that view. See *Nunez v Nationwide Mutual Ins Co,* 472 A2d 1383 (Me, 1984); *Kotzian v Barr,* 81 NJ 360; 408 A2d 131 (1979); *Guin v Ha,* 591 P2d 1281 (Alas, 1979); *Bossert v Douglas,* 557 P2d 1164 (Okla App, 1976); *Houser v Eckhardt,* 35 Colo App 155; 532 P2d 54 (1975), aff'd sub nom *Security Ins Co of Hartford v Houser,* 191 Colo 189; 552 P2d 308 (1976); *Factory Mutual Liability Ins Co of America v Cooper,* 106 RI 632; 262 A2d 370 (1970); *LaPlant v Aetna Casualty & Surety Co,* 107 NH 183; 219 A2d 283 (1966); see further anno: *Validity and construction of state statute or rule allowing or changing rate of prejudgment interest in tort actions,* 40 ALR4th 147, 170-173; Pierce, *Insurer's liability for prejudgment interest: A modern approach,* 17 U of Rich L R 617, 620-624 (1983); Clapp, *Prejudgment interest in tort cases,* 51 Ins Counsel J 73 (1984).

For the reasons expressed in *Denham,* we held an insurer's obligation for prejudgment interest may exceed the insurance policy limits. Accordingly, any contrary decision on this point should not be regarded as authority in Michigan.

Further, we note that this case is distinguishable from those cases which involve allegations that the insurer's liability should exceed the insurance policy coverage since it acted in bad faith, e.g., *Wakefield v Globe Indemnity Co,* 246 Mich 645; 225 NW 643 (1929); *Commercial Union Ins Co v Medical Protective Co,* 426 Mich 109; 393 NW2d 479 (1986).

the Court was unanimous in the view that sound public policy considerations justified its decision.[10]

The Court said:

> The result we reach today is fully supported by considerations of public policy. If we were to rule in favor of the insurer, the following would take place: the insured, not the insurer, would be responsible for the payment of the prejudgment interest in excess of the policy limits and, presumptively, interest on the entire judgment as well. Such a result would appear unconscionable.
>
> We note that by the very terms of the insurance policy the insurer retained control over any investigation process, settlement or litigation. The insured had no control over the process and if the insured chose to act or attempted to settle of his own volition, he would run the risk of forfeiture of any rights under the policy. [407 Mich 535.]

The *Denham* Court did not base its decision solely on the narrow ground that the insurer controlled the litigation. As the Court further explained the insurer not only controls the litigation, but at the same time retains control for investment purposes of the money which represents its policy limits.[11]

---

[10] Justice KAVANAGH joined by Justices FITZGERALD and RYAN disagreed "with Justice MOODY [who authored the majority opinion] that there is a common-law right to interest in Michigan." 407 Mich 537. However, their concurring opinion stated: "Justice MOODY observes that public policy prompts our disposition of these cases and we concur. A fuller exposition of the public policy argument is set forth in Judge WALSH's dissent in *Dittus v Geyman,* 68 Mich App 433; 242 NW2d 800 (1976)." 407 Mich 538.

[11] We note that one commentator, critical of this reasoning, states:

> The court in *Denham* also found that it was illogical and unfair to require that the prejudgment interest come from the defendant who never had use of the money representing plaintiff's damages. The court calculated that the insurance company would be earning interest on the money before it was paid and that it therefore would be fair to require that it pay the

The Court's reasoning continued:

> The insurer had complete control over
> the . . . policy limits from . . . the date of filing
> the complaint, until . . . when it tendered [that
> amount] without interest. Even assuming that the
> insurer were required to set the funds aside from
> its general investment fund because of the pending
> litigation, the funds did not remain idle. The funds
> were invested. And, again, even assuming that the
> funds were invested in conservative short-term
> enterprises, the insurer certainly would not lose
> anything by paying the prejudgment interest but
> would probably retain a profit.
>
> Payment of prejudgment interest not only com-
> pensates the prevailing party but also liability for
> prejudgment interest may act as an incentive to
> the insurer to promptly settle a meritorious claim.
> Without such an incentive, the insurer may refuse
> to settle a meritorious claim in hopes of forcing
> plaintiff to settle for less than the claim's true
> value. The insurer risks nothing. Even if pro-
> tracted litigation results, the insurer will only be
> liable for its policy limits—all the while reaping a
> tidy sum from its investment of the policy limits.
> [407 Mich 536.]

---

prejudgment interest to plaintiffs. This, however, overlooks the
fact that an integral part of the insurance business is investing
money. The return on investments, as well as the amount of
losses, is used to set rates. If insurance companies are required
to pay prejudgment interest, it must inevitably affect rates.
Professor Glavin, Professor of Law, Wayne State University,
commenting on *Cosby* [n 5 *supra*], said:

"This result seems questionable. Where the policy by its
terms specifically covered the interest liability assumed by the
insurer, it seems arguable that this represented the liability
insured against on which the premium was based. To hold
otherwise imposes on the insurer increased liability which it
never agreed to cover . . . . [T]his seems inconsistent with the
general principle that an insurer can determine what risks he
is willing to assume." Glavin, *Constitutional Law Survey*, 19
Wayne L Rev 391, 410 (1973). [Nye, Denham v Bedford: *Statu-
tory prejudgment interest and its effect on third party insurers*,
1979 Det C L R 345, 349, n 28.]

It is the combination of these circumstances which reduces incentive for prompt settlement by the insurer of a meritorious claim, and which justifies on public policy grounds the requirement that the insurer, rather than the insured, pay prejudgment interest on that part of the judgment which the insurer controls.

Other courts have also reasoned that it would be inimical to the sound administration of justice to allow an insurer to control the settlement process while retaining investment profits on its policy limits, and leaving the insured to pay prejudgment interest occasioned by delays in the process. See *Busik v Levine,* 63 NJ 351; 307 A2d 571 (1973). Also 8A Appleman, Insurance Law & Practice, § 4894.25, pp 77-79 and cases cited in n 3.

Although the *Denham* Court looked to the fact that the insurer, not the insured, "retain[s] control over any investigation process, settlement or litigation," 407 Mich 535, it is important to recognize that *Denham* involved only a single insurer, and its focus was on the relationship between the insured and the insurer, not the relationship between two insurers.

While INA, the excess insurer, did not participate in defending the insured in the underlying litigation, there is no question that INA had timely notice of the suit. We also note that under the terms of its own insurance policy INA had "the right and duty to defend any suit against the insured . . . ."

In the instant case, during the prejudgment period, Canadian, the primary insurer, had control for investment purposes of the $300,000 which represented its own policy limits. But neither Canadian nor the insured had control over or use of the $1,000,000 which represented INA's policy lim-

its. INA had effective use of that money throughout the period of the litigation.

We find no compelling consideration which persuades us that the full obligation for all prejudgment interest should be shouldered by only one of the carriers. On the contrary, we believe, in the absence of special circumstances, that the obligation should be shared by both carriers on a prorata basis.

When the liability of a primary carrier for prejudgment interest is related to its policy limits, the insurer has a basis for assessing the extent of its exposure and fixing its premiums. However, since a primary carrier has no control over the amount of excess coverage which an insured may purchase, if the rules were otherwise, the exposure of the primary carrier would be uncertain and impossible to assess. It is essential that public policy considerations strike a balance which allows

> [a]n insurance company [to] limit the risks it assumes and fix its premiums accordingly. [*Lehr v Professional Underwriters,* 296 Mich 693, 696; 296 NW 843 (1941).]

See *Cosby v Pool,* 36 Mich App 571, 578; 194 NW2d 142 (1971), and *Celina Mutual Ins Co v Citizens Ins Co of America,* 133 Mich App 655, 659; 349 NW2d 547 (1984).

We reject the rationale of *Michigan Milk Producers, supra,* and *Michigan Milk Producers v Commercial Union Ins Co,* 564 F Supp 1545 (WD Mich, 1983), for another reason. As already noted, this Court in *Denham* said:

> Payment of prejudgment interest not only compensates the prevailing party but also liability for prejudgment interest may act as an incentive to

the insurer to promptly settle a meritorious claim. Without such an incentive, the insurer may refuse to settle a meritorious claim in hopes of forcing plaintiff to settle for less than the claim's true value. [*Denham, supra* at 536.]

The approach advocated by INA would encourage an excess insurer to refuse to aid in the "investigation process, settlement or litigation," *Denham, supra* at 535, since, under such reasoning, any participation in the process could render the excess insurer liable for prejudgment interest. We believe that would serve not only to undermine "a good faith vigorous defense of an action," *Celina, supra* at 659, on behalf of the insured, but also to discourage "prompt[ ] settle[ment] [of] a meritorious claim" of an injured party, *Denham, supra* at 536.

In light of these considerations, we believe, as did the Court of Appeals panel in *Celina, supra* at 659, that "pro-rata apportionment of liability for prejudgment interest is the better result . . . ." Accordingly, we conclude that INA is liable for prejudgment interest on its $1,000,000 policy limit.

IV

Next, we are required to determine whether the liability of each insurer for prejudgment interest should be calculated on its policy limits or the full amount of the judgment.[12]

---

[12] As noted earlier, by its terms the consent judgment ordered Canadian and INA to pay

interest owed if any, *on the amount of their policy limits* from the date of filing of the Complaint . . . until the date of Judgment, along with interest owed, if any, on the entire amount of the Judgment ($2,250,000.00) from the date of entry of said Judgment until the date of payment of said insurer's policy limits, under the terms of its insurance policy or other-

Plaintiff maintains that INA and Canadian are obligated under the terms of their own insurance contracts to pay prejudgment interest on the entire judgment, not just the policy limits. Plaintiff points to the "standard interest clause,"[13] language that is common to both contracts. Each policy provides that the insurer shall pay

> all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before . . . [the insurer] has . . . tendered or deposited in court that part of the judgment which does not exceed the limit of [the insurer's] liability thereon.

The interpretation of this "standard interest clause" and its relationship to judgment interest statutes has generated considerable controversy throughout the country.[14]

In support of his argument, plaintiff calls attention to the fact that the standard interest clause, promulgated by the National Bureau of Casualty Underwriters, was revised to its present form in 1956. In a communication issued to its members, the bureau explained the revision:

"Several court cases have held that an insurer's

---

wise to be paid by such insurance carrier under the laws of the State of Michigan . . . . [Emphasis supplied.]

INA argued, and the Court of Appeals found, that plaintiff is barred by the consent judgment from seeking prejudgment interest from the insurers on the basis of any sum in excess of "the amount of their policy limits." While we do not agree for reasons already expressed, we note that this was not the sole basis for the Court of Appeals ruling; on this issue its holding is amply supported by other grounds.

[13] See *Stamps v Consolidated Underwriters,* 208 Kan 630, 633; 493 P2d 246 (1972).

[14] See anno: *Liability insurer's liability for interest and costs on excess of judgment over policy limit,* 76 ALR2d 983, and 8A Appleman, Insurance Law & Practice, § 4894.25, pp 75-107, which discuss and summarize the case law dealing with the liability of an insurer for interest on a judgment which exceeds the policy limits.

obligation to pay interest extends only to that part of the judgment for which the insurer is liable. The respective rating committees have agreed that this is contrary to the intent. As a result, the wording with respect to payment of interest in the new Family Automobile Policy has been restated, in order that it be entirely clear that all interest on the *entire amount of* any judgment, which accrues *after entry of the judgment,* is payable by the insurer until the insurer has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the insurer's liability thereon." [Ramsey, *Interest on judgments under liability insurance policies,* 1957 Ins L J 407, 411.]

See also note, *Insurance: Interest payments under the supplementary payments provision of the standard automobile liability policy,* 52 Marquette L R 396 (1969).[15]

---

[15] Plaintiff cites *Incollingo v Ewing,* 474 Pa 527; 379 A2d 79 (1977), which held an insurer liable for interest which accrued from the date of the verdict rather than from the date of the judgment under the state's judgment interest statute and the "standard interest clause." Pennsylvania law requires that after the verdict all posttrial motions must be disposed of before the judgment may be entered. *Id.* at 536. In *Incollingo,* the verdict was rendered on December 14, 1967, but the judgment was not entered until November 24, 1969. *Id.* at 529. Thus, a close examination of the rationale for awarding this interest, *id.* at 538, reveals that the court was concerned with how to calculate *post*judgment interest under the "standard interest clause":

> If a stated policy limit enabled an insurer to escape paying the interest accruing during the time appeals were pending, appeals which the insurer itself initiated, the insured will be liable for the interest accumulating from the date of verdict despite his or her complete lack of control over the litigation. It is therefore both fair and sensible to hold the insurer liable for interest accruing from the date of verdict notwithstanding its stated "policy limit." See Appleman, 8 Insurance Law and Practice, § 4899, at 364 (1964).

In Michigan, interest which accrues pending an appeal is *post*judgment interest. This is obviously different from prejudgment interest allowed in Michigan which accumulates from the date the complaint is filed and becomes fixed at the time the judgment is entered. Thus,

It is apparent from the explanation provided by the bureau that prior to 1956, when the standard interest clause was changed, some courts had held that an insurer was obligated under the earlier version of the standard interest clause to pay interest only up to or on *its policy limits* "which accrues *after* entry of the judgment." Obviously the clause was revised to make clear that the insurer is obligated for all interest *on the entire judgment* "which accrues *after* entry of the judgment."

As we read the standard interest clause, it clearly imposes a contractual obligation only with respect to *post*judgment interest—interest which accrues *after* entry of judgment. It does not pertain to *pre*judgment interest.

While the exact amount of *pre*judgment interest due is not ascertainable until after the amount of the judgment has been determined, it cannot be said that *pre*judgment interest "accrues *after* entry of the judgment." *Pre*judgment interest vests or becomes fixed at the time the judgment is entered, while *post*judgment interest continues to accumulate or "accrue" after the time the judgment is entered. This is consistent with the ordinary and popular sense of the language of the policy. *Edgar's Warehouse, Inc v United States Fidelity & Guaranty Co,* 375 Mich 598; 134 NW2d 746 (1965); *Kingsley v American Central Life Ins Co,* 259 Mich 53, 55; 242 NW 836 (1932).

For support of his argument that the insurers in this case should pay prejudgment interest on the entire judgment, rather than on policy limits, plaintiff also points to this Court's decision in

we are not persuaded that *Incollingo* supports the imposition of prejudgment interest on the entire amount of the judgment in this case.

*Denham,* particularly the following portion of Justice MOODY's opinion:

> The only issue, tangentially related to the present one, which remains unresolved at common law is not whether an insurer is liable for interest on the policy limits but whether the insurer is liable for interest on the whole judgment. The courts have split on this issue although the majority and modern trend is in favor of holding the insurer liable for interest on the whole judgment. [407 Mich 533.]

Footnote 9 which was inserted as support for those two sentences in the opinion is more important for purposes of our analysis than the text itself. The footnote reads:

> For a thorough discussion of this issue, see 76 ALR2d 983. Although there is some Michigan authority to the contrary, see, *e.g., Cates v Moyses,* 57 Mich App 405; 226 NW2d 106 (1975), *mod* 394 Mich 762; 228 NW2d 380 (1975); *Cosby, supra,* this Court has never fully addressed the issue whether an insurer should be held liable for interest on the entire judgment.

In addition to noting that the quoted language from *Denham* obviously is dicta, we find that plaintiff's reliance upon it for support of his position is unwarranted, as examination of the authority and cases cited clearly reveals. The cases collected in 76 ALR2d 983 relate to the scope of liability for *post*judgment interest contractually assumed by an insurer under the standard interest clause. They do not focus on liability for *pre*judgment interest.

The footnote correctly acknowledges that prior decisions in Michigan do not require an insurer to pay prejudgment interest on the whole judgment.

In *Cosby, supra,* the policy obligated the insurer to pay interest "accruing on verdict or after judgment" to date of payment or tender. The Court of Appeals in *Cosby* held that the insurer was *not* liable for prejudgment interest on the entire judgment but only on its policy limits:

> An insurer can limit the risk it assumes. [Citation omitted.] It follows that the insurer should be liable only for the interest that accrues on the amount of risk it has assumed. Otherwise, it would be paying interest on a risk it did not assume and for which it did not charge premiums. [36 Mich App 578-579.]

The *Denham* footnote also refers to *Cates, supra.* In that case a judgment was entered against the defendant for $60,000; the limits of his insurance policy were $10,000. The policy included the same standard interest clause which is in the policies at issue in the instant case. The Court of Appeals held in *Cates* that the insurer was required to pay interest on $60,000, the *entire judgment,* from the date the complaint was filed until payment in full was made.

Leave to appeal was granted, and this Court sua sponte by order, 394 Mich 762-763 (1975), amended the Court of Appeals decision "so as to require the insurer to pay *pre*judgment interest only on the limit of the . . . policy of insurance . . . ," citing *Cosby, supra.* (Emphasis supplied.)

This Court's order in *Cates* recites also that "[t]he judgment of the Court of Appeals is affirmed in all other respects," leaving in place the requirement that the insurer pay *post*judgment interest on the entire amount of the judgment which accrued after entry of judgment and before payment.

Except for our order in *Cates,* this Court has not

previously addressed the issue whether an insurer should be held liable for *post*judgment interest on the entire judgment. However, the law of Michigan with respect to an insurer's liability for *pre*judgment interest is well settled, at least to this extent: An insurer whose policy includes the standard interest clause is required to pay prejudgment interest from the date of filing of a complaint until the entry of judgment, calculated on the basis of its policy limits, not on the entire judgment, and interest on the policy limits must be paid even though the combined amount exceeds the policy limits.

Accordingly, we hold that Canadian and INA are each liable for prejudgment interest only on the amount of their respective policy limits.

V

Finally, we must determine whether the liability of defendants INA and Canadian for postjudgment interest should be calculated on the basis of their respective policy limits or the full amount of the judgment.

With respect to this issue, the Court of Appeals majority found the language[16] of the consent judgment to be dispositive, reading it as an agreement on the part of the insurers to pay postjudgment interest on the entire judgment. As before, we proceed on the basis that the consent judgment did

---

[16] As earlier noted, with respect to postjudgment interest, the consent judgment provided that Canadian and INA

> shall pay to [plaintiff] . . . interest owed if any, . . . on the entire amount of the Judgment ($2,250,000.00) from the date of entry of said Judgment until the date of payment of said insurer's policy limits, under the terms of its insurance policy or otherwise to be paid by such insurance carrier under the laws of the State of Michigan . . . .

not create "substantive rights and obligations" on the subject of judgment interest, and that the parties intended to leave their differences concerning judgment interest to be resolved through litigation "under the terms of [the insurer's] insurance polic[ies] or . . . under the laws of the State of Michigan."

In deciding this issue, we look to the standard interest clause which, as noted earlier, is common to the policies of both insurers. Once again, the clause provides that each insurer shall pay

> all interest on *the entire amount of* any judgment therein which *accrues after entry of the judgment* and before . . . [the insurer] has tendered or deposited in court that part of the judgment which does not exceed the limit of [the insurer's] liability thereon. [Emphasis supplied.]

·It is unnecessary to repeat the analysis already provided in our discussion of prejudgment interest. We believe it provides compelling justification for the conclusion that in the instant case each insurer contractually obligated itself to pay interest on "the entire amount" of the judgment which "accrue[d] after entry of the judgment . . . ."[17]

As we have previously observed, "[a]n insurer may limit the risk that it assumes." *Cosby, supra* at 578. However, as the court in *Highway Casualty*

[17] We realize that the conclusion we reach is at odds with the decision of the Court of Appeals in *Sederholm v Mich Mut Ins Co,* 142 Mich App 372; 370 NW2d 357 (1985). To support its holding that "neither pre- nor postjudgment interest should be computed on any sum exceeding . . . [the policy limits]," the *Sederholm* majority relied on this Court's decision in *Denham,* see 142 Mich App 388-389, while Judge MAHER in concurrence relied on *Cates, Cosby,* and *Celina,* see 142 Mich App 403.

We point out that the holdings in *Denham, Cosby,* and *Celina* dealt with the issue of prejudgment interest. Only *Cates* addressed the subject of postjudgment interest, and the result ordered in that case by this Court reinforces the conclusion we reach here.

*Co v Johnston,* 104 So 2d 734, 736 (Fla, 1958), aptly stated long ago:

> The casualty company could, of course, have limited its liability on interest . . . . This it did not do.
>
> We are not unaware of the fact that the insurance companies fix their premiums in direct ratio to their contractual obligations. Everyone knows that the insurance field is highly competitive. Had [the insurer] entertained any doubt with reference to its obligation [under the standard interest clause] it could have revised the verbiage of its contract before the issuance thereof.
>
> The dilemma in which the carrier finds itself appears to us to be of its own making. We cannot find any justification for the casualty company's contention that it is not liable for interest on the entire judgment. [Citations omitted.]

In terms of its relationship with the insured, it is both understandable and reasonable that an insurer would contractually assume responsibility for all interest that accrues after entry of judgment. At the point when a judgment is entered by the trial court, the insurer has an option. It may tender its policy limits (together with other amounts it may owe), and thus avoid liability for postjudgment interest, or it may proceed with an appeal.

As one commentator has observed:

> It seems fair to compel the insurer to pay all the interest which accrues *pending an appeal,* even though the judgment is in excess of the policy limits, for the reason that the insured might desire to pay the excess judgment and thus prevent the running of interest, but the insurer's control of the litigation would prevent him from doing so. [8A

Appleman, Insurance Law & Practice, § 4894.25, pp 78-79. Emphasis supplied.][18]

Clearly, insofar as postjudgment interest is concerned, the Court in *Denham, supra* at 533, correctly noted that "the majority and modern trend is in favor of holding the insurer liable for interest on the whole judgment" under the "standard interest clause."[19]

Thus, given the clear language of the "standard interest clause" in these policies, we hold that INA and Canadian, by the terms of their insurance

[18] Of course, we do not decide in this case whether an insurer would be required under different circumstances to pay postjudgment interest on the entire judgment, rather than the policy limits. Another commentator has noted:

> Under the provisions of some policies, it has been held that the insurer is liable for interest only on the amount limited by the policy, and not on the amount recovered in excess of that sum.
>
> This conclusion is based in part on the rationale that during the delay in the payment of the judgment, the insured has the use of the money due on that part of the judgment for which the insurer is not liable. [15A Couch, Insurance (2d ed), § 56:18, p 23.]

[19] See *Highway Casualty Co v Johnston,* 104 So 2d 734, 736 (Fla, 1958); *River Valley Cartage Co v Hawkeye-Security Ins Co,* 17 Ill 2d 242; 161 NE2d 101; 76 ALR2d 978 (1959); *Plasky v Gulf Ins Co,* 160 Tex 612; 335 SW2d 581 (1960); *Powell v T A & C Taxi, Inc,* 104 NH 428; 188 A2d 654 (1963); *Southern Farm Bureau Casualty Ins Co v Robinson,* 236 Ark 268; 365 SW2d 454 (1963); *Mayberry v Home Ins Co,* 264 NC 658; 142 SE2d 626 (1965); *Peterson v Western Casualty & Surety Co,* 19 Utah 2d 26; 425 P2d 769 (1967); *Germer v Public Service Mutual Ins Co,* 99 NJ Super 137; 238 A2d 713 (1967); *Draper v Great American Ins Co,* 224 Tenn 552; 458 SW2d 428 (1970); *Stamps v Consolidated Underwriters,* n 13 supra; *McPhee v American Motorists Ins Co,* 57 Wis 2d 669; 205 NW2d 152 (1973); *In re Tichota Estate,* 191 Neb 484; 215 NW2d 885 (1974); *Security Ins Co of Hartford v Houser,* n 9 supra; *Knippen v Glens Falls Ins Co,* 184 US App DC 40; 564 F2d 525 (1977); *Stibal v Carland,* 381 NW2d 855 (Minn App, 1986); *Green v J C Penney Auto Ins Co,* 806 F2d 759 (CA 7, 1986). See, generally, anno: *Liability insurer's liability for interest and costs on excess of judgment over policy limit,* 76 ALR2d 983; 8A Appleman, Insurance Law & Practice, § 4894.25, pp 75-86, and 15A Couch, Insurance (2d ed), § 56:18, pp 23-24.

policies assumed the obligation to pay postjudg-
ment interest on the entire amount of the judg-
ment, including the amount in excess of the com-
bined policy limits, in proportion to the limits of
their respective policies.[20]

## VI

Accordingly, for the reasons stated we affirm the
decision of the Court of Appeals.

RILEY, C.J., and LEVIN, BRICKLEY, and CAV-
ANAGH, JJ., concurred with GRIFFIN, J.

BOYLE, J. (*concurring in part and dissenting in
part*). We are asked to decide in this case the
relative liability of two insurance carriers for pre-
judgment and postjudgment interest on a jury
award that exceeded the combined contractual
liability of each insurer. I agree with the majority
that as between a primary and secondary insurer,
liability for prejudgment interest should not rest
solely with the insurer that controlled the defense
of the underlying litigation. Pro-rata distribution
between a primary and a secondary insurer will
serve to assure that an otherwise interested party
will not avoid participation in the resolution of a
dispute to avoid possible prejudgment interest lia-
bility. I agree with the majority that as to post-
judgment interest the language of the standard

[20] We do not overlook Canadian's argument that its liability for
postjudgment interest was terminated on July 8, 1983, when it
"tendered" its policy limits plus interest to INA. The argument would
prevail if Canadian's money had been deposited in court or tendered
to the plaintiff. We agree with the Court of Appeals that the "tender"
required by the standard interest clause, upon which Canadian relies,
involves the offer of payment to the person entitled to receive the
funds. See *Thurber v Jewett*, 3 Mich 295, 307 (1854), 74 Am Jur 2d,
Tender, § 15, p 554, and Black's Law Dictionary (5th ed), tender, p
1315. In this case, we are not required to consider how the relation-
ship would have been affected if there had been bad faith or an
unreasonable failure to settle on the part of one of the insurers.

interest clause contained in the policies of Canadian Universal and INA is dispositive. The standard interest clause clearly obligates an insurer to pay interest on the entire amount of the judgment. This interpretation enjoys the support of the majority of courts that have addressed this issue,[1] and no compelling legal argument or policy consideration is offered to disturb that to which the parties have agreed.

Thus, while I agree with the majority on the apportionment and postjudgment interest issues, I write separately to express my concern over the analysis employed to decide the scope of the defendants' prejudgment interest liability. In *Denham v Bedford,* 407 Mich 517; 287 NW2d 168 (1980), this Court concluded that the prejudgment interest statute, MCL 600.6013; MSA 27A.6013, becomes part of the insurance contract and that it replaces any contractual provisions with which it conflicts. *Id.,* p 530. Consequently, to properly measure an insurer's liability for prejudgment interest we must first examine the insurance contract in light of the statute together with any other agreements between the parties to discern the limits of their understanding.

The policies for both defendants provided for the payment of postjudgment interest only.[2] Under the

───────────

[1] See anno: *Liability insurer's liability for interest and costs on excess of judgment over policy limit,* 76 ALR2d 983.

[2] The interest clause found in Canadian Universal's policy provides in part:

"The company will pay, in addition to the applicable limit of liability:

"(a) all expenses incurred by the company, all costs taxed against the insured in any suit defended by the company and *all interest on the entire amount of any judgment therein which accrues after entry of the judgment* and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon." [Emphasis added.]

rule in *Denham,* MCL 600.6013; MSA 27A.6013 also is part of both agreements.[3] Thus, the "contracts" provided that Canadian Universal and INA would be responsible for prejudgment interest to be calculated from the date of filing the complaint, and postjudgment interest on the entire judgment to be calculated from the date of entry of the judgment until payment, tender, or deposit with the court of their portions of the judgment. The only question left unanswered from the language of the agreement as modified by MCL 600.6013(2); MSA 27A.6013(2) is whether prejudgment interest would be calculated on the basis of the limits of their respective policies or the entire judgment.

On this issue the majority concludes that the proper resolution is that of *Cosby v Pool,* 36 Mich App 571; 194 NW2d 142 (1971), and *Cates v Moyses,* 57 Mich App 405; 226 NW2d 106 (1975), modified 394 Mich 762; 228 NW2d 380 (1975). The rule to be gleaned from these decisions is that because "[a]n insurer can limit the risk it assumes . . . [i]t follows that the insurer should be liable only for the interest that accrues on the

Similarly, the INA policy provided that INA would pay:

> "all expenses incurred by INA, all costs taxed against the Insured in any suit defended by INA and *all interest on the entire amount of any judgment therein which accrues after entry of the judgment* and before INA has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of INA's liability thereon." [Emphasis added.]

[3] MCL 600.6013(2); MSA 27A.6013(2) provides:

> (2) For complaints filed before June 1, 1980, in an action involving other than a written instrument having a rate of interest exceeding 6% per year, the interest on the judgment shall be calculated from the date of filing the complaint to June 1, 1980, at the rate of 6% per year and on and after June 1, 1980, to the date of satisfaction of the judgment at the rate of 12% per year compounded annually.

amount of risk it has assumed." *Cosby, supra,* p
578. Applying this rule, the majority then con-
cludes:

> [T]he law of Michigan with respect to an insur-
> er's liability for *pre*judgment interest is well set-
> tled, at least to this extent: An insurer whose
> policy includes the standard interest clause is
> required to pay prejudgment interest from the
> date of filing of a complaint until the entry of
> judgment, calculated on the basis of its policy
> limits, not on the entire judgment, and interest on
> the policy limits must be paid even though the
> combined amount exceeds the policy limits. [*Ante,*
> p 23.]

I am not persuaded that it is necessary or appro-
priate to resolve this question as a matter of law.
Rather, we should resolve this case on the basis of
an examination of the understanding of the par-
ties as to that which Canadian Universal and INA
had bound themselves. I would look to the lan-
guage of the amended order of judgment and
consent judgment entered into by Canadian Uni-
versal, INA, Modern Research Corporation, and
Steven Matich.

The relevant portion of the consent judgment
provides:

> IT IS FURTHER HEREBY ORDERED that *Canadian
> Universal Insurance Company, Ltd., and Insurance
> Company of North America, shall pay to the said
> Steven P. Matich, and his attorneys, Zeff and Zeff,
> interest owed if any, on the amount of their policy
> limits from the date of filing of the Complaint in
> this action until the date of Judgment,* along with
> interest owed, if any, on the entire amount of the
> Judgment ($2,250,000.00) from the date of entry of
> said Judgment until the date of payment of said
> insurer's policy limits, under the terms of its
> insurance policy or otherwise to be paid by such

insurance carrier under the laws of the State of Michigan; *it being ordered and understood between the parties that the alleged liability of Canadian Universal Insurance Company, Ltd., and Insurance Company of North America for any interest claimed owing on the Judgment by either carrier shall be litigated in this action before the Honorable James A. Hathaway* and it is further understood between the parties and ordered that neither the Canadian Universal Insurance Company, Ltd., nor the Insurance Company of North America shall be relieved of its liability to the Plaintiff for the payment of such interest by reason of the release of Modern Research Corporation from liability under the Judgment. [Emphasis added.]

In my view, the parties agreed that interest owed on the judgment, if any, would be limited to the policy limits for prejudgment interest and extend to the entire judgment for postjudgment interest. That portion of the order dealing with postjudgment interest is consistent with the language of the standard interest clause. The portion pertaining to prejudgment interest appears also to be consistent with the parties' understanding of the obligations that Canadian Universal and INA had agreed to assume.[4]

At issue, then, is simply a construction of the agreement between Canadian Universal, INA, Modern Research, and Steven Matich. It is the consent

[4] On February 27, 1984, Canadian Universal tendered its draft to plaintiff's counsel in the amount of $508,044.81 representing their policy limits of $300,000, costs and taxes of $43,928.25, and interest of $164,116.56. The interest payment represented interest on the entire judgment from May 20, 1983, the date of entry of the judgment, to July 8, 1983, the date of Canadian Universal's tender to INA, and prejudgment interest on its policy limits. Further, a review of the relevant transcripts of proceedings before Judge Hathaway reveals that INA believed that it was not responsible for any interest because it was an excess insurer, but that if liability was found, it only could be liable for prejudgment interest on $1,000,000, its policy limits.

judgment that reflects the intent of those parties. *Union v Ewing,* 372 Mich 181, 186; 125 NW2d 311 (1963); *Dora v Lesinski,* 351 Mich 579, 582; 88 NW2d 592 (1958). Because the parties each have agreed to limit the insurers' prejudgment interest liability to the limits of their respective policies, it is unnecessary for this Court to decide that the award of prejudgment interest must, as a matter of law, be confined to the limits of an insurance policy. Certainly the parties could agree to measure prejudgment interest on the basis of the actual judgment. Similarly, as in this case, the parties could agree that if a court should find interest to be due, that interest would be calculated on the basis of the limits of the insurance policy.[5]

Canadian Universal and INA could have drafted their policies to limit their obligations to pay prejudgment interest to their respective policy limits; this they did not do. Instead, a provision for prejudgment interest was drafted into the consent judgment. We need only construe that which the parties have agreed to; having done so, we need go no further.

I concur in the result reached today on the issue of prejudgment interest. To the extent that our ruling mandates that prejudgment interest must be limited to the limits of an insurer's policy, I respectfully dissent.

ARCHER, J., concurred with BOYLE, J.

[5] The determination of prejudgment interest, although statutorily provided, need not be considered at all. The prevailing party in a dispute could waive any prejudgment interest as part of a postjudgment settlement.