(No. 67649.—

HARTFORD ACCIDENT & INDEMNITY COMPANY, Appellee, v. AETNA INSURANCE COMPANY, Appellant.

*Opinion filed September 27, 1989.—Rehearing denied December 4, 1989.*

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Bridgman, Edward J. Zulkey, Michael J. Wagner and John M. Murphy, of counsel), for appellant.

Norman J. Barry and Alan S. Madans, of Rothschild,

Barry & Myers, of Chicago, for appellee.

JUSTICE CALVO delivered the opinion of the court:

The instant action stems from an underlying wrongful death case in which the $1.5 million judgment exceeded the insurance coverage provided by the primary insurer, defendant, Aetna Casualty and Insurance Company (Aetna). The excess insurer, plaintiff, Hartford Accident and Indemnity Company (Hartford), filed a complaint for declaratory relief and damages in January of 1987, seeking, in count I, a determination that Hartford was not liable for post-judgment interest that accrued on the portion of the underlying judgment for which Hartford provided excess coverage, and seeking, in counts II and III, a finding that Aetna breached a duty to Hartford when Aetna failed to settle the case for $1 million (Aetna's policy limit), resulting in a $500,000 loss to Hartford.

On cross-motions for partial summary judgment with respect to count I of Hartford's complaint, the circuit court, on August 18, 1987, entered an order granting Aetna's motion for partial summary judgment and denying Hartford's. The circuit court determined that Hartford was solely liable "for the accrued post-judgment interest on the $500,000 excess portion of [the] judgment." Pursuant to the circuit court's Rule 304(a) finding (107 Ill. 2d R. 304(a)), Hartford sought review of the circuit court's order.

The appellate court reversed (173 Ill. App. 3d 665), relying upon language in the insurers' policies and this court's decision in *River Valley Cartage Co. v. Hawkeye-Security Insurance Co.* (1959), 17 Ill. 2d 242. Although the applicability of *River Valley* is controverted in the cause now before us, the material facts of this case are not subject to dispute.

In 1979, Helen Buczyna brought a wrongful death action against the insured, Cuomo & Son Cartage Company (Cuomo), and its employee John Arias. Aetna provided Cuomo and Arias with primary vehicle liability insurance coverage in the amount of $1 million for the period in which decedent's death occurred. Hartford provided Cuomo and Arias with excess vehicle liability insurance coverage. On April 10, 1984, the jury returned a verdict against Cuomo and Arias assessing Buczyna's damages at $1.5 million, an amount that exceeded Aetna's primary policy limit and thereby triggered Hartford's umbrella coverage. The judgment was affirmed on July 21, 1986. The suit was defended, and the appeal prosecuted, by an attorney selected by Aetna.

On October 11, 1986, while a petition for leave to appeal to this court was pending, Aetna entered into a partial-settlement, partial-satisfaction-of-judgment agreement with Buczyna, whereby Aetna paid Buczyna $1,191,667, an amount representing Aetna's policy limit plus accrued interest and minus the settlement discount. On December 23, 1986, Hartford entered into a partial-satisfaction-of-judgment agreement with Buczyna, paying Buczyna $500,000, the amount of the judgment exceeding Aetna's policy limit, but excluding the post-judgment interest that accrued thereon. Both Aetna's and Hartford's agreements with Buczyna acknowledged the dispute between Aetna and Hartford concerning liability for the post-judgment interest on the $500,000 portion of the judgment in excess of Aetna's policy limit. That dispute spawned the litigation previously mentioned which culminated in the circuit court's order holding Hartford liable for the portion of post-judgment interest at issue.

We begin our analysis by examining the pertinent contractual provisions in the insurers' agreements with

the insured. Section VI(c) of the Hartford umbrella policy provides:

> "With respect to any occurrence not covered by the underlying policies *** or any other underlying insurance collectible by the insured, but covered by the terms and conditions of this policy *** the company shall:
>
> * * *
>
> (c) pay *** all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the company's liability thereon."

The Aetna primary policy, the "underlying policy" in this instance, reads as follows:

> "In addition to our limit of liability, we will pay for you:
>
> * * *
>
> 4. All interest accruing after the entry of a judgment in a suit we defend. Our duty to pay interest ends when we pay or tender our limit of liability."

In *River Valley*, 17 Ill. 2d at 244, this court construed policy language which obligated the insurer to pay:

> "all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of the judgment as does not exceed the limit of the company's liability thereon."

In *River Valley*, the insurer had provided coverage only to the extent of $50,000. A judgment for $175,000 was obtained against the insured. The insurer contended, *inter alia*, that it was liable for interest only on the sum of $50,000. After commenting on the ambiguity of the policy provisions, this court concluded that the language of the insurer's policy created liability for interest on the entire judgment, stating:

> "The phrase referring to interest uses the term 'judgment' without qualification while in the same clause the phrase limiting the duration of the liability for interest refers to 'such part of the judgment as does not exceed the limit of the company's liability thereon.' Obviously

the insurer knew how to qualify the term 'judgment' to achieve the result that it urges. It did not do so." *River Valley*, 17 Ill. 2d at 245.

Although the language employed in Aetna's policy is not identical to that used by Hawkeye-Security in the *River Valley* case, the provisions are very similar in that the insurer promised to pay "all interest" after entry of judgment, and the unqualified use of the term "judgment" is followed by language intended to limit the duration of liability for interest, wherein the insurer refers to its "limit of liability." As in *River Valley*, we have no doubt that Aetna knew how to limit its liability for post-judgment interest and simply failed to do so.

Indeed, Aetna acknowledges that it would be liable for post-judgment interest on the entire judgment under the *River Valley* holding, but for Hartford's involvement in the case. However, Aetna urges us to hold Hartford liable for interest that Aetna would otherwise be contractually obligated to pay, arguing that such a result is warranted because of public policy considerations and Hartford's "separate common law equitable obligation." Although Aetna devotes much of its argument to matters of public policy and "fairness," it restricts its discussion of Hartford's contractual obligation to a single paragraph. In that paragraph, Aetna charges that Hartford "mischaracterizes the language of [Hartford's] contract and confuses its voluntary contractual obligation with its wholly separate common law equitable obligation." Aetna continues, presenting its own interpretation of Hartford's policy:

"Nowhere in its policy did Hartford provide that it would be liable for post-judgment interest *only* when underlying coverage was unavailable. Merely because Hartford undertook, by contract, to pay post-judgment interest when no other policy expressly assumed that obligation does not mean that it can never be held liable for post-judg-

ment interest under common law principles of equity, when another policy happened to provide coverage for the occurrence at issue." (Emphasis in original.)

Evidently, there *is* some confusion as to Hartford's contractual obligation, and Aetna's foregoing analysis does nothing to clarify the matter. Our reading of Hartford's policy is consistent with the appellate court's:

"section VI of Hartford's excess policy comes into play only when Hartford is acting as the primary carrier." 173 Ill. App. 3d at 668.

Construing the two policies together, we perceive no overlapping of obligations to pay post-judgment interest. This distinguishes the instant case from *Matich v. Modern Research Corp.* (1988), 430 Mich. 1, 420 N.W.2d 67, the primary case upon which Aetna relies. In *Matich*, a jury award substantially exceeded the combined policy limits of the primary and excess liability insurance carriers. Clauses common to the policies of both insurers committed them to pay "all interest on the entire amount of any judgment therein which accrue[d] after entry of judgment." (*Matich*, 430 Mich. at 24, 420 N.W.2d at 77.) Under the facts in *Matich*, the supreme court of Michigan determined that the insurers were obligated to pay post-judgment interest on the entire amount of the judgment, including the amount in excess of the combined policy limits, in proportion to the limits of their respective policies. (*Matich*, 430 Mich. at 26-27, 420 N.W.2d at 78.) Unlike *Matich*, the judgment in this case did not exceed combined policy limits and the insurers did not assume identical obligations with respect to the payment of all post-judgment interest. Had both carriers assumed identical obligations, the solution which Aetna proposed, and which *Matich* adopted, might have been considered. In the case *sub judice*, however, the insurers' policies were not duplicate; nor did they conflict.

Given the facts of this case, we see no reason to impose liability upon Hartford which it did not contract to undertake. Under the terms of Aetna's policy, and our decision in *River Valley*, Aetna, the company that defended the suit and prosecuted the appeal, would have been obligated to pay all post-judgment interest had Cuomo not obtained excess coverage. Presumably, Aetna charged premiums accordingly to cover the risk it had assumed. True, Hartford had use of the $500,000 and, no doubt, drew interest on that sum at Aetna's expense until such time as Aetna tendered its policy limit and terminated its duty to pay interest; however, Cuomo would have obtained the same benefit had it been responsible for paying the $500,000 excess. Aetna poses various other hypothetical situations in which inequity might occur unless we invoke "public policy" to achieve a "fair" result and hold Hartford liable for what Aetna believes should be Hartford's proportionate share of post-judgment interest. We decline to do so. The dilemma in which Aetna finds itself appears to be of its own making. If Aetna had wanted to limit its liability for post-judgment interest in the event that its insured purchased excess coverage, it could have so indicated in its policy. It can hardly be argued that Aetna lacks the legal sophistication to limit its liability as it sees fit. Under the circumstances, we will not rewrite the parties' policies for them to impose an obligation where none was undertaken.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*