# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF EUGENE WAYNE HUNT, by
MARIE HUNT, Personal Representative,

        Plaintiff/Counter-
        Defendant/Garnishor-Plaintiff-
        Appellee,

v

ROGER DRIELICK, doing business as ROGER
DRIELICK TRUCKING,

        Defendant/Counter-Plaintiff/Cross-
        Plaintiff/Cross-Defendant-Appellee,

and

COREY DRIELICK,

        Defendant/Counter-Plaintiff/Cross-
        Plaintiff/Cross-Defendant-Appellee,

and

GREAT LAKES CARRIERS CORP.,

        Defendant/Cross-Defendant-
        Appellee,

and

GREAT LAKES LOGISTICS & SERVICES,
INC., and MERMAID TRANSPORTATION,
INC.,

        Defendants,

and

FOR PUBLICATION
December 14, 2017
9:00 a.m.

No. 333630
Bay Circuit Court
LC No. 96-003280-NI

-1-

SARGENT TRUCKING, INC.,

        Defendant/Cross-Plaintiff-Appellee,

and

EMPIRE FIRE AND MARINE INSURANCE
COMPANY,

        Garnishee-Defendant-Appellant.

---

BRANDON JAMES HUBER,

        Plaintiff/Garnishor-Plaintiff-
        Appellee,

v

COREY A. DRIELICK and ROGER DRIELICK,
doing business as ROGER DRIELICK
TRUCKING,

        Defendants/Counter-
        Plaintiffs/Cross-Plaintiff/Cross-
        Defendant-Appellees ,

and

GREAT LAKES CARRIERS CORP.,

        Defendant/Cross-Defendant-
        Appellee,

and

GREAT LAKES LOGISTICS & SERVICES,
INC., and MERMAID TRANSPORTATION,
INC.,

        Defendants,

and

No.  333631
Bay Circuit Court
LC No.  97-003238-NI

SARGENT TRUCKING, INC.,

        Defendant-Appellee,

and

EMPIRE FIRE AND MARINE INSURANCE
COMPANY,

        Garnishee-Defendant-Appellant.

---

THOMAS LUCZAK and NOREEN LUCZAK,

        Plaintiffs/-Garnishor-Plaintiffs-
        Appellees,

v

COREY A. DRIELICK and ROGER DRIELICK,
doing business as ROGER DRIELICK
TRUCKING,

        Defendants/Counter-Plaintiff/Cross-
        Plaintiffs/Cross-Defendant-
        Appellees,

and

GREAT LAKES CARRIER CORP.,

        Defendant/Cross-Defendant-
        Appellee,

and

GREAT LAKES LOGISTICS & SERVICES,
INC., and MERMAID TRANSPORTATION,
INC.,

        Defendants,

and

No.  333632
Bay Circuit Court
LC No.  96-003328-NI

-3-

SARGENT TRUCKING, INC.,

        Defendant-Appellee,

and

EMPIRE FIRE AND MARINE INSURANCE
COMPANY,

        Garnishee-Defendant-Appellant.

Before:  M. J. KELLY, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

BOONSTRA, J.

In these consolidated cases, garnishee-defendant Empire Fire and Marine Insurance Company (Empire) appeals by right the June 2, 2016 final judgments entered by the trial court in favor of garnishor-plaintiffs Marie Hunt (as personal representative of the estate of Eugene Wayne Hunt) (Hunt), Brandon James Huber (Huber), and Thomas and Noreen Luczak (the Luczaks) (together, plaintiffs or garnishor-plaintiffs)[1] holding Empire liable for the amounts of consent judgments that had been entered into in three underlying cases against defendants Roger Drielick d/b/a Roger Drielick Trucking (Drielick Trucking)[2] and Corey Drielick, plus prejudgment and postjudgment interest.  The trial court had entered a separate but similar judgment in each underlying case; the judgments differed only in respect to the amount awarded to each plaintiff.  Empire challenges the trial court's October 1, 2015 written opinion, issued in all three cases, holding that insurance coverage for a multivehicle accident was not precluded under the leasing clause of a business-use exclusion in an "Insurance for Non-Trucking Use" policy issued by Empire to Drielick Trucking.  Empire also challenges the trial court's decision to award garnishor-plaintiffs statutory interest in excess of Empire's policy limits.  We affirm in part, vacate in part, and remand for further proceedings.

---

[1] It appears that defendants Great Lakes Carriers Corporation (GLC) and Sargent Trucking, Inc. (Sargent) assisted the garnishor-plaintiffs with their collection efforts as part of a settlement agreement, including by filing writs of garnishment with garnishor-plaintiffs' consent.  GLC and Sargent were not designated as garnishor-plaintiffs in our Supreme Court or the trial court.

[2] The Corporate Division of Michigan's Department of Licensing and Regulatory Affairs (LARA) lists an entry for "Drielick Trucking, LLC" and identifies its owner and resident agent as "Roger A. Drielick."  It does not appear that the LLC was named in the actions below.  No party has raised as an issue the existence of the LLC or its connection, if any, to the actions.  See https://cofs.lara.state.mi.us/CorpWeb/CorpSearch/CorpSummary.aspx?ID=801087433 (last visited October 30, 2017).

I.  PERTINENT FACTS AND PROCEDURAL HISTORY

A.  BUSINESS USE EXCLUSION

This case has a lengthy procedural history involving multiple prior appeals.  Relevant to this appeal, our Supreme Court remanded the case to the trial court "for further fact-finding to determine whether Drielick Trucking and [GLC] entered into a leasing agreement for the use of Drielick Trucking's semi-tractors as contemplated under the policy's clause related to a leased covered vehicle." *Hunt v Drielick*, 496 Mich 366, 369; 852 NW2d 562 (2014).

In *Hunt*, the trial court had concluded that the business-use exclusion did not preclude coverage, even if there was a lease between Drielick Trucking and GLC.  *Hunt*, 496 Mich at 371.  This Court disagreed, holding that the first clause of the business-use exclusion, which precluded coverage if injury or damage occurred "while a covered 'auto' is used to carry property in any business," applied despite the fact that the truck was not actually carrying property at the moment of the accident.  *Hunt v Drielick*, 298 Mich App 548, 555-557; 828 NW2d 441 (2012), rev'd 496 Mich 366 (2014).[3]  Our Supreme Court granted garnishor-plaintiffs' applications for leave to appeal.  *Hunt v Drielick*, 495 Mich 857; 836 NW2d 684 (2013).

Our Supreme Court set forth the following relevant facts:

> Roger Drielick owns Drielick Trucking, a commercial trucking company.  It seems that throughout most of the year in 1995, Drielick Trucking leased its semi-tractors to Sargent Trucking (Sargent).  Around October 1995, Roger orally terminated the lease agreement with Sargent and began doing business with Bill Bateson, one of the operators of GLC, the other being his wife at the time, Jamie Bateson.

> On January 12, 1996, Bill Bateson dispatched Corey Drielick, a truck driver employed by Drielick Trucking, to pick up and deliver a trailer of goods stored on GLC's property.  While driving the semi-tractor without an attached trailer, Corey picked up his girlfriend and proceeded to GLC's truck yard.[4]  When he was less than two miles away from the yard, Corey was involved in a multivehicle accident.  Eugene Hunt died and Noreen Luczak and Brandon Huber were seriously injured.

---

[3] This Court stated that it did not need to address whether the second clause of the business-use exclusion, relating to a lease or rental agreement, applied in light of its conclusion that the first clause of the business-use exclusion applied.  *Id*. at 556.  The trial court had concluded that neither prong of the policy's business-use exclusion was applicable.  *Hunt*, 298 Mich App at 553.

[4] The Court noted that this case involved a semi-tractor driven "bobtail," which means "without an attached trailer, as opposed to a semi-tractor driven with an attached trailer that is empty." *Hunt*, 496 Mich at 373, quoting Prestige *Cas Co v Mich Mut Ins Co*, 99 F3d 1340, 1343 (CA 6, 1996)."

Marie Hunt (on behalf of her deceased husband), Thomas and Noreen Luczak, and Huber filed suits against Corey and Roger Drielick, Drielick Trucking, Sargent, and GLC. Empire, which insured Drielick Trucking's semi-tractors under a non-trucking-use or bobtail, policy, denied coverage and refused to defend under the policy's business-use and named-driver exclusions. Plaintiffs settled with Sargent and GLC. Plaintiffs later entered into consent judgments with the Drielicks and Drielick Trucking.[5] The parties entered into an "Assignment, Trust, and Indemnification Agreement," wherein they agreed that Roger Drielick would assign the rights under the insurance policy with Empire to plaintiffs, Sargent, and GLC. Sargent and GLC agreed to help plaintiffs' collection efforts from Empire in exchange for a portion of any proceeds received from Empire.

Sargent and GLC filed writs of garnishment against Empire. In response, Empire filed a motion to quash, arguing again that the policy exclusions apply, among other things. The trial court denied Empire's motion and entered an order to execute the consent judgments, reasoning that the business-use exclusion does not apply and the named-driver exclusion is invalid under MCL 500.3009(2). The Court of Appeals affirmed the trial court's ruling regarding the named-driver exclusion but reversed the trial court's ruling regarding the business-use exclusion, holding that further factual determinations were necessary because the fact that the semi-tractor "was traveling bobtail at the time of the accident, creat[ed] a question of fact whether the truck was being used for a business purpose at that time." *Hunt v Drielick*, unpublished opinion per curiam of the Court of Appeals, issued October 5, 2004 (Docket Nos. 246366, 246367, and 246368), p 5[, 2004 WL 2238628)]. The Court mentioned that the policy exclusions are clear but "whether this accident was a covered event is not," explaining that Roger Drielick orally revoked his lease with Sargent, and, contrary to federal regulations, there was no written lease with GLC. [*Hunt*, 496 Mich at 369-371.]

In reversing this Court's decision, the Supreme Court concluded that the first clause of the business-use exclusion precludes coverage only if the covered vehicle is carrying attached property and that, because it was undisputed that the semi-tractor was not carrying attached property at the time of the accident, the first clause did not preclude coverage in this case. *Hunt*, 496 Mich at 376, 379. The Court further stated:

---

[5] The March 14, 2000 consent judgments obligated Roger Drielick d/b/a Drielick Trucking Company and Corey Drielick in the total amount of $780,000, payable as follows: $550,000 to Hunt; $50,000 to Huber; and $180,000 to Luczak. The consent judgments also provided for "statutory interest from the date of the filing of the Complaint" and for postjudgment interest in the event the judgment was not satisfied by January 1, 2001.

Because we hold that the first clause of the business-use exclusion does not preclude coverage, it is necessary to determine whether the second clause does. After considering the record in light of the trial court's prior factual findings, we conclude that this case requires that the trial court make further findings of fact.

It is clear that Drielick Trucking and the Batesons did not enter a written lease regarding the use of Drielick Trucking's semi-tractors, contrary to federal regulations. Because Drielick Trucking's and the Batesons' business relationship was in direct contravention of applicable federal regulations, our order granting leave to appeal focused primarily on the potential lease agreement and whether the Court of Appeals should have, instead, resolved this case under the policy's leasing clause.

Apparently considering that clause, the trial court previously explained that the parties had agreed that there are no material issues of fact in dispute; however, that does not appear to be the case. Bill and Jamie Bateson operated Great Lakes Logistics & Services (GLLS). In addition to the carrier company, GLC, GLLS was a brokerage company that connected semi-tractor owners, such as Roger Drielick, with carriers that are federally authorized to transport goods interstate, such as GLC. The parties dispute whether Bill Bateson dispatched Corey under GLC's authority or merely brokered the deal under GLLS's authority. Furthermore, the trial court considered the parties' "verbal agreement and course of conduct," concluding that the payment terms and the fact that Corey was not bound by a strict pick-up deadline meant that the business relationship was not triggered until Corey actually picked up for delivery the trailer of goods. Yet it remains uncertain whether the parties entered into a *leasing* agreement as *contemplated by the terms of the insurance policy*. Barring GLLS's alleged involvement, an oral arrangement between or course of conduct might have existed between GLC and Drielick Trucking but whether that agreement constituted a lease for the purposes of the policy is a threshold determination that has not yet been fully considered.

Accordingly, we direct the trial court on remand to consider the parties' agreement to decide whether there was, in fact, a lease agreement between Drielick Trucking and GLC as contemplated by the business-use exclusion's leasing clause. If so, the precise terms of that agreement must be determined, and the trial court should reconsider whether Corey was acting in furtherance of a particular term of the leasing agreement at the time of the accident. [*Id.* at 379-381.]

On remand, the trial court held that there was no lease agreement as contemplated by the leasing clause of the business-use exclusion, and that Corey Drielick was not acting in furtherance of a particular term of any leasing agreement at the time of the accident. Therefore, the court again concluded that the leasing clause of the business-use exclusion did not preclude coverage under the insurance policy between Drielick Trucking and Empire.

-7-

## B. JUDGMENT INTEREST

Thereafter, garnishor-plaintiffs filed a motion for entry of judgment against Empire, seeking a judgment that Empire was liable for payment of the amounts owing under the consent judgments, including statutory interest. Empire argued that its liability for payment of the liabilities under the consent judgments was limited to the $750,000 policy limits because the policy contains no provision for the payment of prejudgment interest in excess of policy limits, and because the policy's "Supplementary Payments" provision contains an interest clause that provides that postjudgment interest will be paid only in suits in which Empire assumes the defense. In other words, Empire argued that it was not obligated to pay postjudgment interest because it did not defend the underlying suits. The trial court found that Empire had breached its duty to defend under the policy and that the breach had negated the provision in the policy that limited the payment of judgment interest to those suits in which Empire had assumed the defense. The trial court entered final orders of judgment inclusive of statutory judgment interest from the date of filing of the underlying complaints through June 2, 2016, obligating Empire to pay garnishor-plaintiffs in the amount of $1,342,722.78 for the Hunt consent judgment, $113,912.97 for the Huber consent judgment, and $439,831.90 for the Luczak consent judgment.

This appeal followed.

## II. STANDARD OF REVIEW

We review de novo the interpretation of an insurance contract. *Morley v Auto Club of Mich*, 458 Mich 459, 465; 581 NW2d 237 (1998). We review for clear error the trial court's findings of fact. *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). We review de novo questions regarding the interpretation and application of a statute. *Beach v State Farm Mut Ins Co*, 216 Mich App 612, 623-624; 550 NW2d 580 (1996).

## III. THE LEASING CLAUSE OF THE BUSINESS-USE EXCLUSION

The narrow issue presented is whether the second clause (the leasing clause) of the business-use exclusion in Empire's insurance policy applies to preclude coverage for the accident in this case. As framed by the Supreme Court, the question is whether Drielick Trucking and GLC "entered into a leasing agreement as contemplated by the terms of the insurance policy." We conclude that the trial court correctly determined that the leasing clause did not preclude coverage.

> "An insurance policy is similar to any other contractual agreement, and, thus, the court's role is to determine what the agreement was and effectuate the intent of the parties." *Auto–Owners Ins Co v Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992). "[W]e employ a two-part analysis" to determine the parties' intent. *Heniser v Frankenmuth Mut Ins Co*, 449 Mich 155, 172; 534 NW2d 502 (1995). First, it must be determined whether "the policy provides coverage to the insured," and, second, the court must "ascertain whether that coverage is negated by an exclusion." *Id*. (citation and quotation marks omitted). While "[i]t is the insured's burden to establish that his claim falls within the terms of the policy," *id*., "[t]he insurer should bear the burden of proving an absence of

-8-

coverage," *Fresard v Mich Millers Mut Ins Co*, 414 Mich 686, 694; 327 NW2d 286 (1982) (opinion by Fitzgerald, CJ). See, also, *Ramon v Farm Bureau Ins Co*, 184 Mich App 54, 61; 457 NW2d 90 (1990). Additionally, "[e]xclusionary clauses in insurance policies are strictly construed in favor of the insured." *Churchman*, 440 Mich at 567. See, also, *Group Ins Co of Mich v Czopek*, 440 Mich 590, 597; 489 NW2d 444 (1992) (stating that "the exclusions to the general liability in a policy of insurance are to be strictly construed against the insurer"). However, "[i]t is impossible to hold an insurance company liable for a risk it did not assume," *Churchman*, 440 Mich at 567, and, thus, "[c]lear and specific exclusions must be enforced," *Czopek*, 440 Mich at 597. [*Hunt*, 496 Mich at 372-373.]

In addition, clear and unambiguous policy language must be enforced according to its plain meaning. *Auto–Owners Ins Co v Harvey*, 219 Mich App 466, 469; 556 NW2d 517 (1996).

The leasing clause provides that the policy does not apply "while a covered 'auto' is used in the business of anyone to whom the 'auto' is leased or rented." There is no dispute that Drielick Trucking and GLC did not enter into a written lease regarding the use of Drielick Trucking's semi-tractors. However, the plain language of the leasing clause of the business-use exclusion does not require a written lease.[6]

In the context of the first clause of the business-use exclusion, the Supreme Court stated in *Hunt*, 496 Mich at 375:

Considering the commonly used meaning of the undefined terms of the clause to ascertain the contracting parties' intent, *Czopek*, 440 Mich at 596, the word "while" means "[a]s long as; during the time that," *The American Heritage Dictionary of the English Language* (1981). Further, "use" is defined as " 'to employ for some purpose; put into service[.]' " *Hunt*, 298 Mich App at 556, quoting *Random House Webster's College Dictionary* (2001). See, also, *The American Heritage Dictionary of the English Language* (1981) (defining "employ" as "[t]o engage in the services of; to put to work").

"Lease" is defined as "a contract conveying land, renting property, etc., to another for a specified period." *Random House Webster's College Dictionary* (2001). "Rent" means "to grant the possession and use of (property, machinery, etc.) in return for payment of rent." *Id.* As our Supreme Court noted, the parties do not dispute that the semi-tractor being operated without an attached trailer was a "covered 'auto' " under the policy. See *Hunt*, 496 Mich at 375 n 6. Applying these definitions, the leasing clause makes clear that there is no coverage when an

---

[6] Empire cites in its brief a number of cases discussing how courts of other states have found the absence of a written lease, pursuant to the requirements set forth in 49 CFR 376.11 and 49 CFR 376.12, to be irrelevant in determining *carrier liability* for *leased* equipment, because a lease will be *implied* in the absence of a written lease. None of these cases, however, address the issue presented in this case, i.e., whether a lease was formed.

accident occurs during the time that the auto is being used in the business of anyone who has been given possession and use of the auto for a specified period in return for the payment of rent.

Empire argues, as it did in the trial court, that an exclusive, ongoing oral lease existed between Drielick Trucking and GLC. The trial court found that a lease as contemplated by the business-use exclusion did not exist between Drielick Trucking and GLC at the time of the accident. The evidence supports the trial court's finding that the parties did not mutually agree to give possession and use of the semi-tractor to GLC for a specified period of time in return for the payment of rent. According to Roger Drielick, GLC was "supposed" to prepare a written lease agreement, but never did. Both Bill Bateson and Jamie Bateson (of GLC) denied that the semi-tractor was the subject of any type of lease with GLC. Corey Drielick used the semi-tractor for personal errands, including transporting another person, during the period that Drielick Trucking transported for GLC. Corey kept the semi-tractor at his home and, when dispatched, would drive to the GLC yard, at which time he would couple the semi-tractor with a trailer and obtain the necessary paperwork from GLC to carry out the delivery. There is no indication that Corey had to be at GLC's yard at a specific time, or that he was not free to go where he wanted with the semi-tractor or to decline an assignment. Drielick Trucking did not receive payment until arriving at GLC's yard and coupling the semi-tractor with the trailer. The broker, GLLS, paid Drielick Trucking for deliveries made using the semi-tractor.[7] Bill Bateson did not provide Drielick Trucking with the lettering for the semi-tractor involved in the accident, and Bateson testified that he had no knowledge that GLC lettering had been placed on the semi-tractor. Drielick Trucking did not receive a "Michigan Apportioned Registration Cab Card" with GLC's name on it, Corey denied the existence of any documents provided by GLC inside of the semi-tractor, and the accident report did not reveal that police officers were provided with any document at the scene indicating that the semi-tractor was under lease to GLC at the time of the accident. In light of this evidence, Empire failed to establish that the Drielick Trucking and GLC had "a relationship where use, control, and possession had been transferred to GLC for a period of time, including the time of the accident," pursuant to a contract in return for the payment of rent. At most, the evidence supported a finding that a lease would be formed as of the time that Drielick Trucking arrived at the GLC yard to accept an assignment. Accordingly, we conclude that a lease as contemplated by the insurance policy did not exist at the time of the accident and that the leasing clause of the business-use exclusion does not apply.

## IV. JUDGMENT INTEREST

MCL 600.6013 provides, in relevant part:

(1) Interest is allowed on a money judgment recovered in a civil action, as provided in this section. . . . .

---

[7] One check in the amount of $500 was issued by GLC to Drielick Trucking on November 20, 1995. According to Jamie Bateson, the check was mistakenly drawn on the GLC account by the bookkeeper.

* * *

(8) Except as otherwise provided in subsection (5) and (7) and subject to subsection (13), for complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action is calculated at 6-month intervals from the date of filing the complaint at a rate of interest equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, according to this section. Interest under this subsection is calculated on the entire amount of the money judgment, including attorney fees and other costs.

MCL 600.6013 is remedial and primarily intended to compensate prevailing parties for expenses incurred in bringing suits for money damages, and for any delay in receiving such damage. *Heyler v Dixon*, 160 Mich App 130, 152; 408 NW2d 121 (1987). Because it is remedial, the statute should be liberally construed in favor of the plaintiff. See *Denham v Bedford*, 407 Mich 517, 528; 287 NW2d 168 (1980).

Each of the consent judgments provides for an amount of damages "plus statutory interest from the date of the filing of the Complaint, costs and attorney fees. In the event the Judgment herein is not satisfied by January 1, 2001, interest thereon will continue . . . until said Judgment is satisfied." Empire objected to garnishor-plaintiffs' request for both prejudgment and postjudgment interest, relying on the following language in the policy in support of its argument that it is not responsible under MCL 600.6013 for payment of prejudgment interest in excess of the policy limits and that postjudgment interest is limited to suits it defends:

2. COVERAGE EXTENSIONS

a. Supplementary Payments. In addition to the Limit of Insurance, we will pay for the "insured"

* * *

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any suit we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

A. PREJUDGMENT INTEREST

Empire argues that MCL 600.6013 does not mandate that a defendant's liability insurer must pay prejudgment interest on a judgment entered against an insured in excess of the insurance policy limits where the plain, unambiguous terms of the policy state that it is not obligated to do so. We agree that MCL 600.6013 does not speak to an insurer's liability for prejudgment interest; however, we disagree with Empire's assertion that it is not obligated to pay prejudgment interest under the terms of the policy at issue in this case.

-11-

An insurer is permitted to contractually limit the risk it assumes. See, e.g., *Cottrill v Mich Hosp Serv*, 359 Mich 472, 477; 102 NW2d 179 (1960) (an insurer can limit the risk it assumes and fix its premiums accordingly); *Cosby v Pool*, 36 Mich App 571, 578; 194 NW2d 142 (1971) (the insurer should be liable only for the interest that accrues on the amount of risk it has assumed). In *Matich v Modern Research Corp*, 430 Mich 1, 23; 420 NW2d 67 (1988), our Supreme Court held:

> [T]he law of Michigan with respect to an insurer's liability for *pre*judgment interest is well settled, at least to this extent: An insurer whose policy includes the standard interest clause is required to pay prejudgment interest from the date of filing of a complaint until the entry of judgment, calculated on the basis of its policy limits, not on the entire judgment, and interest on the policy limits must be paid even though the combined amount exceeds the policy limits.

The "standard interest clause" at issue in *Matich* stated that the insurer shall pay "all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before . . . [the insurer] has . . . tendered or deposited in court that part of the judgment which does not exceed the limit of [the insurer's] liability thereon." *Id*. at 18. It was silent with regard to prejudgment interest.

The interest clause in the instant case is similarly devoid of language related to prejudgment interest, and it therefore does not contractually limit Empire's risk in that regard. Pursuant to *Matich*, Empire is therefore responsible for prejudgment interest calculated based on the policy limit, even if the judgment amount plus prejudgment interest exceeds the policy limits. See *Matich*, 430 Mich at 23; *Cochran v Auto Club Ins Ass'n*, 169 Mich App 199, 202; 425 NW2d 765 (1988).

We do agree that the trial court erred when calculating the amounts of prejudgment interest owed. The trial court awarded prejudgment interest from the dates the underlying complaints were filed until the final judgments on the writs of garnishment were entered on June 2, 2016. Empire argues that prejudgment interest can only be measured from the date of the original complaints through March 14, 2000, the date of the consent judgments. We agree. The settling parties memorialized their agreement into consent judgments. When those judgments were entered, the prejudgment interest period ended and the postjudgment interest period began. See *Madison v Detroit*, 182 Mich App 696, 701; 452 NW2d 883 (1990). Therefore, prejudgment interest accrued until the consent judgments were entered; interest accruing after entry of the consent judgments is postjudgment interest. Empire is obligated to pay prejudgment interest on the policy limits from the dates the complaints in the underlying actions were filed until the date of the consent judgments.

## B. POSTJUDGMENT INTEREST

Empires argues that the trial court erred by finding that it was subject to liability under MCL 600.6013 for payment of postjudgment interest because the express language of the

"Supplementary Payments" provision of the policy limited its obligation to pay postjudgment interest to suits it defends.[8]  We agree.  The trial court reasoned that if Empire had provided a defense for its insured, as it was obligated to do, it would have been required to pay postjudgment interest.  Garnishor-plaintiffs did not, however, raise a claim that Empire had breached a duty under the policy to defend its insured, and such a claim was not litigated in the trial court.[9]

Our obligation is to give effect to the clear language of the insurance contract and not to invent or create an ambiguity and then resolve it to expand coverage.  There is no ambiguity in Empire's interest clause.  It clearly provides that postjudgment interest will be paid only in suits

---

[8] Empire distinguishes this case from *Matich*, in which the Court held that the language of the standard interest clause was clear and that the insurers, by the terms of their insurance policies, had assumed the obligation to pay postjudgment interest on the entire amount of the judgment, including the amount in excess of the policy limits.  *Matich*, 430 Mich at 24, 26.  Empire argues that the policy in the present case differs from the policy in *Matich* because it expressly limits liability for postjudgment interest in excess of policy limits to suits it defends.

[9] An insurer's duty to defend is a contractual duty that is owed to its insured, not to a judgment creditor.  See *Lisiewski v Countrywide Ins Co*, 75 Mich App 631, 636; 255 NW2d 714 (1997).  The record reflects, however, that the insured in this case, Drielick Trucking, assigned to garnishor-plaintiffs any and all claims for insurance coverage under the Empire policy.  Consequently, garnishor-plaintiffs could have brought a direct action against Empire challenging its refusal to defend its insured.  See *Ward v DAIIE*, 115 Mich App 30, 36, 38-39; 320 NW2d 280 (1982) ("A judgment creditor, armed with a valid assignment of an insured's cause of action for alleged unlawful refusal to defend or settle a claim, may institute a direct action against the insurer"); see also *Davis v Great Am Ins Co*, 136 Mich App 764, 768-769; 357 NW2d 761 (1984) (holding that the availability of a garnishment action does not preclude "a breach of contract action by a judgment creditor as assignee against an insurer as a remedy *in addition to* garnishment.")  (Emphasis added).  Nonetheless, garnishor-plaintiffs did not bring a claim challenging Empire's refusal to defend.  The post-judgment garnishment proceedings did not encompass a claim that Empire had breached its contract with its insured by refusing to defend.  See *Ward*, 115 Mich App at 38-39 (noting that a judgment creditor's prior garnishment action against the judgment debtor's insurer "related to an attempted satisfaction of a default judgment," whereas the judgment creditor's subsequent action "concern[ed] an alleged breach of contract of an insurance policy," explaining that "[t]he current action does not raise an issue which was litigated between plaintiff and defendant in the garnishment action.  A comparison of the two matters displays that they are different; the first was a post-judgment proceeding, and the current litigation is an action by the insured, through an assignee, seeking enforcement of an insurance policy after an alleged breach of contract.").  Because the issue of Empire's refusal to defend was not raised or litigated in this case, the trial court erred by ruling in the posture of the case before it that Empire had breached the insurance contract by failing to defend its insured, and by consequently awarding postjudgment interest notwithstanding the policy language.  We express no opinion regarding whether garnishor-plaintiffs may yet have a viable direct (by assignment) cause of action against Empire for its alleged breach.

in which Empire assumes the defense. The purpose of such clauses is to protect the insured when the insurer assumes the defense of a matter and therefore controls the timing of payment of any judgment that is entered against the insured. See *McCandless v United Southern Assurance Co*, 191 Ariz 167; 953 P2d 911 (1997).[10] If the insurer delays payment on the judgment, for example by taking an appeal, it must pay for this delay by assuming responsibility for interest on the entire amount of the judgment, even if the combined total exceeds policy limits. Under the plain language of the insurance policy at issue in this case, however, Empire is not obligated to pay postjudgment interest because Empire did not defend the underlying suits.

## V. CONCLUSION

We hold that the leasing clause of the business-use exclusion does not apply to deny coverage in this case, because a lease as contemplated by the insurance policy did not exist at the time of the accident. Accordingly, we affirm the trial court's holding that insurance coverage for the accident was not precluded under the leasing clause of the business-use exclusion. We also hold that Empire is obligated to pay prejudgment interest on the policy limits from the date the complaints in the underlying actions were filed until the date of the consent judgments, but that Empire is not obligated to pay postjudgment interest because Empire did not defend the underlying suits.

Accordingly, we vacate that part of the trial court's final judgment that awarded statutory interest through the date of the judgment on the writs of garnishment and remand for calculation of prejudgment interest in accordance with this opinion. We otherwise affirm.

Affirmed in part, vacated in part, and remanded. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Amy Ronayne Krause

---

[10] Cases from other jurisdictions are of course not binding on this Court, but may be persuasive. *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914 (2006).